LaVALLEE, CORRECTIONAL SUPERINTENDENT
*v.* DELLE ROSE

No. 72–905.  Decided March 19, 1973

Per Curiam.

The State of New York petitions for certiorari to review the adverse determination of the Court of Appeals in this federal habeas corpus proceeding directing the release* of respondent Pasquale Delle Rose.  Delle Rose was serving a life sentence for the premeditated murder of his wife in 1963.  At his trial, occurring before *Jackson*

---

*Respondent was ordered released unless retried within 60 days without the use of his confessions.

v. *Denno,* 378 U. S. 368 (1964), respondent was convicted by a jury which chose to credit his two confessions over his protestation of accidental involvement, and which presumably found them to be voluntary. On appeal, the New York appellate court directed the trial court to hold a special hearing to determine the voluntariness of his confessions in accordance with *People* v. *Huntley,* 15 N. Y. 2d 72, 204 N. E. 2d 179 (1965), the State's procedural response to this Court's decision in *Jackson* v. *Denno, supra.*

On remand to the trial court, the State rested on the trial record, and the respondent, in addition to relying on the record, testified in his own behalf. After extensively summarizing the trial evidence and respondent's explanations of certain of his confession statements, the court concluded:

"On all evidence, both at the trial and at the hearing, and after considering the totality of the circumstances, including the omission to warn defendant of his right to counsel and his right against self-incrimination, I find and decide that the respective confessions to the police and district attorney were, in all respects, voluntary and legally admissible in evidence at the trial. . . ."

On this basis, respondent's conviction was affirmed by the New York appellate courts, 33 App. Div. 2d 657, 27 N. Y. 2d 882, 265 N. E. 2d 770 (1970), and this Court denied certiorari, 402 U. S. 913 (1971).

Respondent then petitioned the United States District Court for a writ of habeas corpus alleging his confessions were involuntary. That court held that since the state trial judge had "neglected to say how far he credited— and to what extent, if any, he discounted or rejected" respondent's testimony and the evidence before him, there was no "adequate" determination within the mean-

ing of 28 U. S. C. § 2254 (d), which would have entitled the state court's findings to a presumption of correctness and placed on respondent the burden of establishing by convincing evidence that the state court's conclusion was erroneous. The District Court therefore held its own hearing, found both confessions involuntary, and ordered respondent discharged from custody unless retried. A divided panel of the Second Circuit affirmed.

The Court of Appeals held that the state court's opinion did not meet the requisites of 28 U. S. C. § 2254 (d) which provides in relevant part:

> "[A] determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction . . . evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct, unless the applicant shall establish or it shall otherwise appear . . . —
> "(1) that the merits of the factual dispute were not resolved in the State court hearing . . . ."

Although it is true that the state trial court did not specifically articulate its credibility findings, it can scarcely be doubted from its written opinion that respondent's factual contentions were resolved against him.

Respondent's wife was killed by a blast from a sawed-off shotgun device which had been set to shoot through the back of their front car seat. His confessions indicated that because of extreme jealousy, he rigged the device to go off when his wife pulled the car seat forward. For some reason it failed initially; so when he was seated with her in the car, he operated it by hand. At trial, he claimed his confessions were false and testified that he was seated in the car with his wife and he noticed a lump on the floor behind the front seat. When he reached down to investigate, it shot her.

At trial, in support of his theory of relentless questioning and police coercion, respondent presented evidence to the effect that, at the time of his confessions,

"he had had a back injury, and therefore was in pain; that he was taken to the garage and asked to put his hand in the back seat where the blood of his wife was; that the police threatened to beat him up if he did not admit he killed her; that he was compelled to say by the police that he had killed his wife but that what he meant was that he had done so inadvertently, by placing his hand over the lump; and that, after telling the officer he wanted to see his wife, he did not remember what happened thereafter until 9:00 o'clock in the morning."

In addition, at his *"Huntley"* hearing, he testified that the officers told him they would beat him up if he did not talk to them; that one of the detectives told him to put his hands in the front seat hole where his wife's blood was and when he did not, the detective took his hands and put them there himself; and that he did not remember anything past the time when he asked to see his wife at the morgue, including the giving of the second statement. He also attempted to explain the reasons for his giving such detailed and factually accurate confession statements.

The trial court's summary of the State's evidence tended to show that although respondent had been taken to the station house about 5 p. m. on the day of the murder, he was not even a suspect as late as 9 p. m., and he was only giving information. He was taken to the morgue at his own request, a factor which triggered the first confession. Further, he had been allowed to sit with his family, was given coffee by his mother-in-law and police, and he admitted that his treatment by the police was good during the time of the questioning.

There was also testimony that he had been offered food, but as he admitted, he was not hungry. Again at the *"Huntley"* hearing, he acknowledged that the police had treated him "nice." It was "on this evidence" that the state trial court made its finding and conclusion that the confessions were voluntary.

The Court of Appeals stated that it could not tell whether the state courts "credited Delle Rose's story of the circumstances surrounding his confessions but still held these to have been voluntary, a conclusion to which we could not agree, or based their holding of voluntariness on a partial or complete rejection of his testimony, in which event the district judge would have been bound to deny the petition." 468 F. 2d 1288, 1290. In *Townsend* v. *Sain,* 372 U. S. 293, 314–315 (1963), the precursor of 28 U. S. C. § 2254 (d), this Court set forth general standards governing the holding of hearings on federal habeas petitions, stating:

> "[T]he possibility of legal error may be eliminated in many situations if the fact finder has articulated the constitutional standards which he has applied. Furthermore, the coequal responsibilities of state and federal judges in the administration of federal constitutional law are such that we think the district judge may, in the ordinary case in which there has been no articulation, properly assume that the state trier of fact applied correct standards of federal law to the facts, in the absence of evidence . . . that there is reason to suspect that an incorrect standard was in fact applied. Thus, if third-degree methods of obtaining a confession are alleged and the state court refused to exclude the confession from evidence, the district judge may assume that the state trier found the facts against the petitioner, the law being, of course, that third-degree methods necessarily produce a coerced confession."

Here, not only is there no evidence that the state trier utilized the wrong standard, but there is every indication he applied the correct standards. His determination was made on the "totality of the circumstances" and, in this pre-*Escobedo* v. *Illinois,* 378 U. S. 478 (1964), pre-*Miranda* v. *Arizona,* 384 U. S. 436 (1966), situation, the court also considered the facts that respondent was not warned of his rights to the assistance of counsel and against self-incrimination before confessing. And we quite agree with the District Court's statement that it could not go along with the state trial court's conclusion of voluntariness if it "were to find the facts to have been as petitioner's [Delle Rose's] testimony portrayed them." See, *e. g., Spano* v. *New York,* 360 U. S. 315 (1959); *Watts* v. *Indiana,* 338 U. S. 49 (1949). Under these circumstances, we think the District Court could have been reasonably certain that the state court would have granted relief if it had believed respondent's allegations. See *Townsend* v. *Sain, supra,* at 315.

We, therefore, hold that the opinion of the state trial court met the requirements of 28 U. S. C. § 2254 (d)(1), and that the courts below incorrectly determined it did not. The burden was thus on respondent to establish in the District Court by convincing evidence that the state court's determination was erroneous. The motion of the respondent for leave to proceed *in forma pauperis* and the petition for certiorari are granted. The judgment of the Court of Appeals is reversed, and this cause is remanded for further proceedings consistent with this opinion.

MR. JUSTICE MARSHALL, with whom MR. JUSTICE DOUGLAS, MR. JUSTICE BRENNAN, and MR. JUSTICE STEWART concur, dissenting.

Although I am in complete disagreement with this Court's *per curiam* decision herein, I see no reason to set

this case for oral argument in light of the majority's firmly held views.

I cannot accept the Court's holding that both the District Court and the Court of Appeals improperly concluded that the voluntariness of respondent's confessions was not adequately resolved by the state trial court, thereby relieving respondent of the obligation to establish "by convincing evidence that the factual determination by the State court was erroneous," 28 U. S. C. § 2254 (d). The Court does not deny that the state trial court judge, after summarizing the record evidence and respondent's testimony on the question of voluntariness, utterly failed to explain the basis for his conclusion that "considering the totality of circumstances . . . the respective confessions to the police and district attorney were, in all respects, voluntary and legally admissible in evidence at the trial . . . ." Despite this absence of any reasoned explanation for the state court's action, the Court now assures us that "it can scarcely be doubted from its written opinion that respondent's factual contentions were resolved against him." *Ante,* at 692. I could not disagree more, and therefore I must respectfully dissent.

Foremost, the Court's certainty as to the basis for the state court's action rests upon the fact that it is clear the state court "applied" the correct legal standard in evaluating the voluntariness of respondent's confession. Without question, the state court in this case ritualistically recited the standard of "totality of the circumstances" which governs the determination of voluntariness with respect to these 1963 confessions. See, *e. g., Clewis* v. *Texas,* 386 U. S. 707, 708 (1967). But this recitation in itself provided the courts below with no guarantee that the state court had not erroneously applied this standard to the facts of this case, perhaps accepting respondent's version of the circumstances sur-

rounding the confession, rather than rejecting respondent's version as incredible. Thus, the able District Judge noted that "[t]his court cannot be 'reasonably certain' what facts of possibly coercive or stressful impact the trial judge found from the disputed testimony" introduced before him. 342 F. Supp. 567, 570.

The Court, however, places heavy reliance upon our prior statement in *Townsend* v. *Sain*, 372 U. S. 293, 314–315 (1963), the source of the test set forth in § 2254 (d) (1), that "the district judge may, in the ordinary case in which there has been no articulation, properly assume that the state trier of fact applied correct standards of federal law to the facts, in the absence of evidence . . . that there is reason to suspect that an incorrect standard was in fact applied. Thus, if third-degree methods of obtaining a confession are alleged and the state court refused to exclude the confession from evidence, the district judge may assume that the state trier of fact found the facts against the petitioner, the law being, of course, that third-degree methods necessarily produce a coerced confession." [1] But this is hardly the limit of the inquiry—contemplated by *Townsend* and § 2254 (d)—

---

[1] Insofar as the Court relies upon this language from *Townsend* in interpreting § 2254 (d)(1), the Court effectively ignores the discretionary character of the decision lodged with the district judge who is faced with a question as to the adequacy of unexplained state court findings. *Townsend* indicates that "the district judge *may, in the ordinary case in which there has been no articulation, properly assume*" that the state court reached a constitutionally permissible conclusion. (Emphasis added.) Today, however, the Court effectively indicates that the district court often *must assume* in such cases that the proper standard was applied. Such a rigid standard seems to me wholly improper and unworkable where the question whether the defendant's testimony was simply rejected and the proper standard applied is essentially one of judgment dependent upon the facts of each particular case. These matters are properly left largely to the discretion of the district judge. And here, certainly, it cannot be said such discretion was abused.

into whether a state court has adequately resolved the factual issues presented by the constitutional claim.

"[E]ven if it is clear that the state trier of fact utilized the proper standard, a hearing is sometimes required if his decision presents a situation in which the 'so-called facts and their constitutional significance [are] . . . so blended that they cannot be severed in consideration.' . . . Unless the district judge can be reasonably certain that the state trier would have granted relief if he had believed petitioner's allegations, he cannot be sure that the state trier in denying relief disbelieved these allegations. *If any combination of the facts alleged would prove a violation of constitutional rights and the issue of law on those facts presents a difficult or novel problem for decision, any hypothesis as to the relevant factual determinations of the state trier involves the purest speculation.* The federal court cannot exclude the possibility that the trial judge believed facts which showed a deprivation of constitutional rights and yet (erroneously) concluded that relief should be denied. Under these circumstances it is impossible for the federal court to reconstruct the facts, and a hearing must be held." *Townsend* v. *Sain, supra,* at 315–316 (emphasis added).

The precise problem encountered by the courts below in evaluating the state court's conclusion—a problem which the Court now effectively ignores—is that the issue of voluntariness in this case presents just the sort of "difficult" mixed question of law and fact which *Townsend* recognized would make federal court speculation concerning the basis for unreasoned state court action wholly inappropriate. To be sure, where, for instance, a defendant alleges simply that a confession was extracted from him by means of a physical beating administered by the police,

it is obvious that if the defendant's story is believed, the confession would be involuntary. Thus, even if a state court holds the defendant's confession to be voluntary without articulating any reasons, a federal district court may safely assume that in such an uncomplicated situation the state court's determination resulted from a rejection of the defendant's factual allegations. But it can hardly be argued that this case involves allegations of the type of straightforward police "third-degree methods of obtaining a confession" which the *Townsend* Court suggested would entail little possibility of misapplication of the relevant legal standard so that a district court might, with reasonable confidence, assume that an unexplained state court finding of voluntariness rests upon a rejection of the defendant's version of the interrogation, not upon constitutional error. For a review of the state court's opinion following the *"Huntley"* hearing reveals that here the state court was confronted, not with an allegation of a single coercive incident which, if believed, would clearly have resulted in a finding of involuntariness, but rather with allegations of a series of coercive police actions applied to a particularly susceptible suspect.

Respondent claimed that he was held and interrogated, apparently without rest, from 5 p. m. on the day of the murder until sometime early the next morning. Throughout this time, respondent purportedly was suffering pain due to a serious back ailment and was undoubtedly handicapped by his lack of facility with the English language. Meanwhile, without any warnings as to his constitutional rights, he was questioned repeatedly by police officers, questioning which allegedly included physical threats if he refused to confess. During this process, respondent was compelled by the police to reenact the alleged murder of his wife complete with his hand being forced by a police officer into the torn seat

back which was wet with his wife's blood. Then the police offered to take respondent on what the District Court properly described as a "macabre" visit to the morgue to see his dead wife's body. There the police obtained the first confession. Subsequently, further questioning by an assistant district attorney produced a second confession at about 6 a. m. A defense psychiatrist testified at trial that respondent was, in his opinion, so exhausted from his long ordeal at the hands of the police that "he would say yes if you asked him if the moon were made of green cheese."

It is possible, of course, that the state court rejected all of respondent's testimony as incredible and therefore properly held the confessions voluntary. On the other hand, if the state court had believed all of respondent's contentions, it would undoubtedly have found the confessions involuntary. There remains, however, the third possibility that the state court believed some of respondent's contentions and rejected others. It is this last possibility that makes for substantial uncertainty in a factually complex case such as this as to whether the state court correctly applied the abstract legal standard and did not, instead, commit constitutional error. Due to the unrevealing nature of the state court's decision, it is impossible to say that that court may not have credited a sufficient portion of respondent's story to establish, under the controlling standard, the involuntariness of his confessions and nevertheless have reached an erroneous conclusion of voluntariness because the question may have been a close one on the facts that it accepted. It is this inherent uncertainty as to what the state court may have believed or disbelieved that justified the action of the District Court and the Court of Appeals in this case. To conclude otherwise, I believe, ignores the *full* import of this Court's reasoning in *Townsend* v. *Sain, supra,* concerning those limited situations in

which a federal district court on habeas corpus may reasonably assume that an unexplained state court determination rests merely upon a rejection of testimony rather than upon constitutional error.

Consequently, in my view, the courts below properly held the State not entitled in this case to the presumption of correctness and the special burden of proof set forth in § 2254 (d).[2] As for the merits, I see no basis for this Court to set aside the District Court's finding of involuntariness, a finding sustained by the Court of Appeals as not "clearly erroneous" under Fed. Rule Civ. Proc. 52 (a). Cf. *Neil* v. *Biggers,* 409 U. S. 188, 201 (1972) (opinion of BRENNAN, J.).

---

[2] The Court, of course, does not hold that the District Court erred in holding a *de novo* evidentiary hearing on the voluntariness of respondent's confession. That is a question distinct from the presumption of validity and the special burden of proof established by 28 U. S. C. § 2254 (d). Section 2254 (d) says nothing concerning when a district judge may hold an evidentiary hearing—as opposed to acting simply on the state court record—in considering a state prisoner's petition for federal habeas corpus. So far as I understand, the question whether such a hearing is appropriate on federal habeas corpus continues to be controlled exclusively by our decision in *Townsend* v. *Sain* even after the enactment of § 2254 (d). See Developments in the Law—Federal Habeas Corpus, 83 Harv. L. Rev. 1038, 1141 (1970). And, *Townsend* explicitly recognizes that, apart from the six specific instances described in that opinion as mandating an evidentiary hearing, "[i]n all other cases where the material facts are in dispute, the holding of . . . a hearing is in the discretion of the district judge. . . . In every case he has the power, constrained only by his sound discretion, to receive evidence bearing upon the applicant's constitutional claim." 372 U. S., at 318.