**UNITED STATES of America ex rel. Robert SCOTT, a/k/a Doc Scott, Petitioner,**

v.

**J. E. LaVALLEE, Superintendent, Clinton Correctional Facility, Respondent.**

No. 74 Civ. 1508(MP).

United States District Court, S. D. New York.

July 25, 1974.

Robert Scott, pro se.

Louis J. Lefkowitz, Atty. Gen. of the State of New York, New York City, by Ralph Lewis McMurray, New York City, for respondent.

## OPINION

POLLACK, District Judge.

Petitioner, presently in state custody in the Clinton Correctional Facility, seeks a writ of habeas corpus. He was convicted of assault and possession of a weapon by a jury in Westchester County Court in July 1972. Petitioner cites al-leged error of the state court in permitting the use of evidence seized from his person in violation of the Fourth and Fourteenth Amendments and also claims that the trial judge improperly remanded him after the trial had begun. Both claims were raised and rejected on appeal to the Appellate Division and for leave to appeal to the New York Court of Appeals. Petitioner has thus exhausted his available state remedies.

The petitioner was arrested without a warrant shortly after the shooting of one James Ramsey. Ramsey named petitioner as his assailant in conversation with the policeman who accompanied him to the hospital. When picked up, the petitioner was given a pat-down search and was found to be in possession of three live bullets which were subsequently matched up with a bullet removed from the body of the victim.

Petitioner objected during the trial to the use of the three bullets as evidence on the grounds that the warrantless arrest and ensuing search and seizure were constitutionally impermissible. After conducting a hearing, the trial court overruled the objection both on the merits and because no motion to suppress had been made prior to the trial as required by state law. New York Criminal Procedure Law Sections 710.20(1), 710.40, and 710.70(3) [1] provide that a pretrial motion to suppress is the exclusive means for challenging the admissibility of tangible property obtained through an unlawful search and that if such a pretrial motion is not made, the right to a judicial determination of the claim is waived absent good cause shown for non-compliance.[2]

Failure to comply with the requirement of a pretrial motion to suppress has been held to preclude raising the objection in federal habeas corpus.

---

1. The provision on waiver, Section 710.70(3), refers to a motion before or "in the course of a criminal action," but this latter clause does not apply to tangible property.

2. Petitioner states that he was unaware of the facts constituting the basis of the sup-pression motion since the third count of the indictment referred to a pistol, but not to the bullets in question. Petitioner also states that there were other factors constituting good cause, but does not identify them.

United States ex rel. Tarallo v. LaVallee, 433 F.2d 4 (2d Cir. 1970), cert. denied, 403 U.S. 919, 91 S.Ct. 2235, 29 L.Ed.2d 697 (1971) (predecessor provisions to the present New York Criminal Procedure Law). *See generally* United States ex rel. Schaedel v. Follette, 447 F.2d 1297, 1299–1300 (2d Cir. 1971); United States ex rel. Di Niro v. Mancusi, 298 F.Supp. 1294, 1297 (S.D.N.Y.1969). However, where the state court nonetheless proceeds to hear and rule on the objection on the merits, untimeliness does not preclude reconsideration of the objection in federal habeas corpus. *See* Warden v. Hayden, 387 U.S. 294, 297 n. 3, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); H. Hart and H. Wechsler, The Federal Courts and The Federal System, 1487 (2d ed. 1973). As opposed to *Tarallo*, counsel for the defendant in the present case promptly objected to the admission of the bullets on the express ground that they were improperly seized and requested and received, with at least the implicit consent of the prosecution, a factual hearing on the merits. In these circumstances, this Court may consider the validity of the search on the merits.

 After taking the testimony of Detective Beale on voir dire, the trial court denied petitioner's objection, finding that Ramsey had been shot, that Ramsey had told Beale shortly after being shot that Scott was his assailant, that Beale knew both Ramsey and Scott personally, and that the search was thus coincident to a valid arrest based upon probable cause that a felony had been committed. The written findings of fact are entitled to a presumption of correctness unless they are found inadequate as judged by the standards set forth in 28 U.S.C. § 2254(d). Petitioner contests the trial court's finding that Ramsey told Beale that Scott was his as-

sailant, there being no express statement to that effect during the hearing on the objection.[3] Beale was apparently about to make such a statement when he was interrupted by an objection which was sustained subject to a proper foundation being laid. (Trans. 179–180) Beale did testify that the arrest was based on a conversation with Ramsey at the hospital. (Trans. 185) Ramsey's statement to Beale that "Doc Scott shot me" appears in a later question to Beale by the prosecution with which Beale did not disagree and to which petitioner's counsel did not object. (Trans. 199) When petitioner's counsel renewed his objection at the close of the state's case, the trial court also had before it the testimony of Officer Hall and Lieutenant Bradford concerning the basis of the radio dispatch and the seizure of the bullets. The trial court again made the same findings of fact and conclusions of law as earlier made. Consequently, the material facts were adequately developed at the state court hearing, and the record taken as a whole fairly supports the trial court's findings. *See generally* LaVallee v. Delle Rose, 410 U.S. 690, 695, 93 S.Ct. 1203, 35 L.Ed.2d 637 (1973).

 The legal standards applied by the trial court and its conclusion of law that the seizure of the bullets was valid were correct. A positive identification by Ramsey shortly after he had been shot of Scott, who was well-known to him, as his assailant hardly suffers from the infirmities of an anonymous informer's tip. *See* United States ex rel. Cardaio v. Casscles, 446 F.2d 632, 636–638 (2d Cir. 1971); People v. Perel, 34 N.Y.2d 462, 358 N.Y.S.2d 383, 315 N.E.2d 452 (1974). At this point, the police had probable cause to believe that Scott

---

3. Petitioner also argues that a federal evidentiary hearing is therefore necessary. However, as indicated below, this Court concludes that the relevant facts were properly found and the correct legal standards applied by the trial court. Thus denial of a federal evidentiary hearing is proper. *Compare* LaVallee v. Delle Rose, 410 U.S. 690, 93 S.

Ct. 1203, 35 L.Ed.2d 637 (1973) with United States ex rel. Williams v. LaVallee, 487 F.2d 1006, 1010–1011 (2d Cir. 1973), cert. denied, 416 U.S. 916, 94 S.Ct. 1622, 40 L.Ed.2d 118 (1974). *See generally* United States ex rel. Griffin v. Vincent, 359 F.Supp. 1072, 1073 (S.D.N.Y.1973).

had committed a felony. Although Hall, the arresting officer, was not personally aware of the facts on which the radio dispatch was based, the collective knowledge of the department is imputed to him for the purpose of testing the validity of the arrest. United States v. Canieso, 470 F.2d 1224, 1230 n.7 (2d Cir. 1972).

■■ A search of the person incident to a lawful arrest is a well-established exception to the Fourth Amendment's warrant requirement. United States v. Robinson, 414 U.S. 218, 224–226, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); United States ex rel. Newsome v. Malcolm, 492 F.2d 1166, 1174 (2d Cir. 1974), cert. granted sub nom., Lefkowitz v. Newsome, 417 U.S. 967, 94 S.Ct. 3170, 41 L.Ed.2d 1138 (1974). As the Supreme Court observed in *Robinson*, the arresting officer is permitted to seize any evidence on the arrestee's person as well as any weapons. 414 U.S. at 226, 94 S.Ct. 467. When Hall gave Scott a pat-down search, he felt the bullets. However, without a gun the bullets did not seem to pose any danger. The subsequent removal of the bullets from Scott's possession by Hall's superior on the way to Ramsey's room at the hospital is immaterial. *See* United States ex rel. Muhammad v. Mancusi, 432 F.2d 1046, 1047–1048 (2d Cir. 1970), cert. denied, 402 U.S. 911, 91 S.Ct. 1391, 28 L.Ed.2d 653 (1971).

Petitioner Scott also claims that the trial court committed prejudicial error in temporarily remanding him during the trial. Petitioner argues that as a

result of being remanded to custody he was unable to consult freely with his counsel during the trial and that the jury may have been improperly influenced by the presence of the two deputies stationed behind him beginning on the fourth day of the trial.

■ However, even if the trial court erroneously remanded the petitioner, in order for this claim to be cognizable in habeas corpus, petitioner must show that he is detained "in violation of the Constitution or laws . . . of the United States". 28 U.S.C. Sec. 2254(a). Mere trial error is insufficient: the error, if any, must rise to the level of deprivation of a fundamentally fair trial.[4] *Compare* United States ex rel. Corby v. Conboy, 337 F.Supp. 517, 519 (S.D.N.Y.1971) (habeas corpus) *with* Bitter v. United States, 389 U.S. 15, 88 S.Ct. 6, 19 L.Ed.2d 15 (1967) (appellate review of a federal trial).

On July 24th, the third day of the trial, the prosecution moved for an order remanding the petitioner on the basis of a threat allegedly made by the petitioner to Ramsey, the key witness in the state's case. Ramsey had not appeared in court that day as expected and a material witness order was also sought. The trial judge proceeded to take the testimony on voir dire of the officer to whom the threat had been reported and concluded that the threat, if substantiated, was sufficiently grave to warrant a temporary remand pending further inquiry.[5] The following morning after Ramsey himself had testified,[6] the trial judge concluded that the evidence presented in

---

4. Even if petitioner could cast his claim in terms of the Eighth Amendment bail provisions, the test would still be whether the Court had decided to remand him "rationally, reasonably and without discrimination." *See* United States ex rel. Covington v. Coparo, 297 F.Supp. 203, 206 (S.D.N.Y.1969); United States ex rel. Goodman v. Kehl, 456 F.2d 863, 868 (2d Cir. 1972).

5. Detective Beale testified that Ramsey had told Beale on July 22nd, that Scott had threatened Ramsey and told him that the mob would kill him if he testified. (Trans. 65) It further appeared that Ramsey had never previously reported any threats to

Beale and that Beale made no attempt to verify the threat, nor did he report it to the prosecution until July 24th.

6. Ramsey testified that he had not been threatened by Scott directly but that he had heard from relatives that he would be in danger if he testified. (Trans. 87–88) Ramsey explained that he had been absent the previous day due to a funeral and had been unable to reach the district attorney's office due to a telephone disorder at that office. He stated that he was not afraid of the petitioner, but that he was nervous about being in Court.

the hearing was insufficient to prove threats made directly to Ramsey by Scott. However, the trial judge was not satisfied to leave the matter in Ramsey's judgment and in his discretion to protect the orderly administration of the trial remanded petitioner for the duration of the trial. The trial judge's decision was based on the prosecution's real concern about Ramsey's availability and safety, Ramsey's unarticulated concern, the gravity of the charge, the anticipated short duration of the trial, and the need to avoid any further delays and interruptions.[7] (Trans. 94–96)

 It is well recognized that a trial judge has broad discretion in ensuring the orderly and expeditious progress of a trial, including the power to remit the defendant to custody, but that this "power must be exercised with circumspection." Bitter v. United States, 389 U.S. 15, 16, 88 S.Ct. 6, 7, 19 L.Ed.2d 15 (1967). Threats to prosecution witnesses may provide proper justification for the exercise of that power. *E.g.*, Carbo v. United States, 288 F.2d 686, 690 (9th Cir. 1961). In the present case, the trial judge did not act summarily, but rather promptly heard testimony and then clearly stated the reasons for his decision. *See* United States v. Stroud, 474 F.2d 737, 738 (9th Cir.), cert. denied, 412 U.S. 930, 93 S.Ct. 2759, 37 L.Ed.2d 157 (1973). While Ramsey's testimony may appear rather equivocal in transcript form, it is not for this Court on a habeas corpus petition to second-guess the trial court's first-hand evaluation of the situation. The trial court's findings of fact are presumed to be correct, and the petitioner has failed to overcome that presumption with clear and convincing evidence. *See* LaVallee v. Delle Rose, 410 U.S. 690, 695, 93 S.Ct. 1203, 35 L.Ed.2d 637 (1973).

Petitioner contends that his attorney was not able to freely consult with him and was therefore unable to prepare his defense. The only specific suggestion of such difficulties which appears in the record was that there were no desks in the counsel room in the jail. (Trans. 165–66) *See generally* Bitter v. United States, 389 U.S. 15, 16–17, 88 S.Ct. 6, 19 L.Ed.2d 15 (1967). Moreover, petitioner was free on bail and presumably had ample opportunity to confer with counsel before the trial. Absent additional indications in the record of concrete difficulties, petitioner's claim of prejudice cannot stand. *See* United States v. Allison, 414 F.2d 407, 414 (9th Cir.), cert. denied, 396 U.S. 968, 90 S.Ct. 449, 24 L.Ed.2d 433 (1969) (federal trial).

 It has been thought by some Courts that remanding the defendant after the trial has begun and the jury selected may pose a dangerous potential to create improper and prejudicial impressions in the minds of the jurors, either that the defendant has done something wrong or that the Judge has already found the defendant guilty. *See, e. g.,* Dorman v. United States, 140 U.S.App.D.C. 313, 435 F.2d 385, 397–398 (1970); United States v. Allison, 414 F.2d 407 (9th Cir.), cert. denied, 396 U.S. 968, 90 S.Ct. 449, 24 L.Ed.2d 433 (1969). However, even this view has no applicability to this case. There was nothing to show that the defendant had been remanded and was not at liberty during the recesses of the trial. Petitioner does not claim that the jury knew that the petitioner had been at liberty at any time after the trial began. United States v. Allison, 414 F.2d 407 (9th Cir.), cert. denied, 396 U.S. 968, 90 S.Ct. 449, 24 L.Ed.2d 433 (1969), nor does petitioner indicate whether these jurors had sat in prior cases where the procedure had been different. *See* United

---

7. Petitioner had been an hour late on the second day of trial, but the judge accepted petitioner's excuse at that time. (Trans. 33–34) The trial judge did not explicitly refer to this incident, but absence or lateness of the defendant may be a proper considera-

tion in a Court's decision to remand. *See* Bitter v. United States, 389 U.S. 15, 17, 88 S.Ct. 6, 19 L.Ed.2d 15 (1967); Dorman v. United States, 140 U.S.App.D.C. 313, 435 F.2d 385, 398 (1970).

States v. Stroud, 474 F.2d 737, 738 (9th Cir.), cert. denied, 412 U.S. 930, 93 S.Ct. 2759, 37 L.Ed.2d 157 (1973). Any effect of the remand on the jurors remains wholly speculative. The appearance of marshals in the courtroom is not of itself indicative of a defendant's guilt. So far as concerns any notion that the judge had indicated in some way that he had an opinion on the case, the trial judge meticulously instructed the jurors that he had no opinions concerning the case and that a judge's opinions are not to influence the jury's deliberations. (Trans. 419–20) The Judge further instructed the jury that their verdict must be based only on the evidence and testimony actually presented in the case. (Trans. 414–17, 460). Thus petitioner has failed to show that remanding him to custody after the trial began or the appearance in the courtroom of deputy marshals deprived him of a fundamentally fair trial.

Petition dismissed.

So ordered.