**UNITED STATES of America ex rel. Carl Evely GREEN**

v.

**Alfred T. RUNDLE, Superintendent.**

**Misc. No. 69–645.**

United States District Court, E. D. Pennsylvania.

Feb. 7, 1975.

Robert P. Lipkin, Philadelphia, Pa., for relator.

Deborah E. Glass, Asst. Dist. Atty., Philadelphia, Pa., for respondent.

## OPINION

LUONGO, District Judge.

This is a petition for writ of habeas corpus[1] by Carl Evely Green, a state prisoner. From the petition and the state court record,[2] it appears that on December 10, 1962,[3] relator entered a plea of guilty to three charges of aggravated assault and battery, resisting arrest and burglary. He was found not guilty by the court on the remaining charges. He was sentenced to a term of imprisonment of two to ten years on the burglary charge and sentence was suspended on the other two charges. No appeal was taken from the judgment of sentence.

After serving a portion of his sentence, relator was released on parole on September 18, 1964. In November 1966 he was arrested and thereafter convicted on new charges and was returned to prison as a parole violator. In January 1968, Green filed a state Post-Conviction Hearing Act Petition. Pursuant to leave of court, on April 11, 1968, court-appointed counsel for Green filed an Amended Petition in which it was alleged that Green's guilty plea resulted from a statement obtained "as a result of the coercion and duress exercised by the Police Officers and because of the apprehension of fear and the inexperience of petitioner and as a result of the denial of assistance of counsel."

A hearing on the petition was held on July 21, 1968, before Judge Stanley Greenberg. In an opinion filed on September 30, 1968, Judge Greenberg held that Green had failed to carry his bur-den to show that his confession was coerced and was the primary motivation for his guilty plea. The court held further that Green was not denied the effective assistance of counsel since the record demonstrated that "trial counsel had a more than adequate knowledge of the background of the defendant and the circumstances of the offense." (Page 2, State Court Opinion). The state court denied relief. The decision was affirmed per curiam by the Pennsylvania Superior Court on May 22, 1969, and, on September 11, 1969, the Supreme Court of Pennsylvania denied allowance of appeal.

In the federal petition, relator again asserts that the plea of guilty was not voluntarily and intelligently entered because he had not received competent advice of counsel at the time of the entry of the plea. A hearing was scheduled on the federal petition but was postponed at the request of counsel to enable them to prepare certain stipulations to supplement the state record. Those stipulations have now been filed (documents Nos. 12 and 18). The record before this court, therefore, consists of the entire state court record supplemented by affidavits of James Egan and Albert Ahrenholz, witnesses to events which occurred on the night of the crime in 1962; the affidavit of Eileen Drelick, secretary to relator's present counsel; two letters from, and one letter to, relator's trial counsel; the Police Offense Report prepared on September 17, 1962; a statement prepared by the police and signed by relator on September 18, 1962; and a letter from the administrator of Hahnemann Hospital advising that records of treatment in 1962 of the victim of the crime and of Green are no longer in ex-

---

1. The petition was filed on December 19, 1969. The Judge to whom the case was assigned resigned. The case was reassigned to me on November 21, 1973. Following a meeting with counsel, proceedings in this court were stayed pending an attempted resolution of the matter in the state court. When resort to the state court proved unsuccessful, proceedings in this court resumed.

2. Commonwealth of Pennsylvania v. Carl Evely Green, Quarter Sessions, Philadelphia County, October Sessions 1962, Nos. 111–115, 120.

3. The date on the face page of the transcript of the plea proceedings is December 10, 1963, but that seems to be a typographical error.

istence. The stipulations were entered into because of the unavailability of several of the witnesses and because the victim of the crime was about to leave the country to live in Indonesia.

The crime which gave rise to this habeas corpus proceeding was committed on September 17, 1962. At about 9:30 p. m. on that date, a young black male followed the female victim into the vestibule of her apartment house at 1704 Race Street where he grabbed and beat her in an apparent robbery attempt. The noise attracted the attention of a neighbor, Albert Ahrenholz, who went to the scene, saw that the young woman was being beaten, and held the door shut while shouting for help. At some point the door opened and the assailant ran out past Ahrenholz. The commotion also attracted the attention of passersby in an automobile, Albert Strohmetz and James Egan. They saw a black male run from the doorway followed by a bleeding girl. Strohmetz went to the aid of the girl who collapsed in his arms. Meanwhile, Ahrenholz gave chase on his motorcycle. Soon the police arrived and Ahrenholz directed them to the area of 17th and Wood Streets where he had chased the assailant. Green was found hiding on the rooftop of a garage in the 1600 block of Wood Street. When Green came down from the rooftop, he was apprehended by the police. Force was used during the arrest and Green was taken to Hahnemann Hospital, was treated there for lacerations of the head and was then taken to the police station. At about 1:00 a. m. on September 18, 1962, Green gave to the police the statement which he contends was coerced and which caused him to enter the guilty plea.

On December 10, 1962, represented by privately retained counsel, and with his mother present in the courtroom, Green entered the guilty plea. In the course of those proceedings, the Assistant District Attorney recounted the events substantially as hereinabove recited. Green's counsel made a plea for mercy on his behalf and called upon the mother to testify. Counsel then asked Green if there was anything he wanted to say to the court, to which Green responded:

> "I'm sorry for what I done. If I wouldn't have been drinking I wouldn't be in the kind of predicament I am; I wouldn't never do what I did. I'm sorry for what I did."

■■ As stated in the brief of relator's counsel, "[r]educed to its essence the issue before this Court is whether Petitioner's plea of guilty was based on reasonably competent advice by counsel. McMann v. Richardson, 379 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763, stands for the proposition that a plea of guilty in a State Court may not be collaterally attacked in a Federal Court on the ground that it was motivated by a coerced confession unless it can be shown that the defendant was incompetently advised by his attorney. A plea of guilty gives rise to a waiver of constitutional safeguards only when the plea of guilty is based upon competent advice of counsel." (Page 6, Memorandum of Law in Support of Petition for Writ of Habeas Corpus, Document No. 13).

Relator concedes that his trial counsel "was one of the most able criminal lawyers practicing in Philadelphia at that time" [4] (Page 7, Memorandum of Law), but contends that trial counsel's performance *in this case* was incompetent. The charge of incompetence is based on the contention that counsel was not adequately prepared to give proper advice; that he had relied on what appeared in the Police Report; that he had failed to interview any of the witnesses named in the Police Report, and that if he had interviewed those witnesses, he would have discovered inaccuracies in the Police Report which would have so undermined the strength of the prosecution's case that entry of a guilty plea would not have been counseled by a competent attorney.

---

4. He is now a member of the Supreme Court of Pennsylvania.

■ It must be noted at this point that in the PCHA proceeding, the state court conducted a fair and complete hearing on the merits of the claims that a coerced confession had induced the guilty plea, and that Green had been denied the effective assistance of counsel. It appears further that the state court applied the correct principles of law to this pre-*Escobedo*,[5] pre-*Miranda*[6] case. The state court's determinations on those issues are therefore entitled to the presumption of correctness under 28 U.S.C. § 2254(d). LaVallee v. Delle Rose, 410 U.S. 690, 93 S.Ct. 1203, 35 L.Ed.2d 637 (1973). I am in complete agreement with, and accept, the findings of the State PCHA Judge, based on the evidence which was before him, that the guilty plea did not result from a coerced confession, and that Green had had the competent assistance of counsel. See United States ex rel. Madison v. Rundle, 422 F.2d 49 (3d Cir. 1970). The only question is whether the supplemental material submitted to this court dictates a different result. I conclude that it does not and that the petition for writ of habeas corpus must be denied.

The main thrust of relator's argument is that trial counsel was misled by the Police Report into believing that Green was constantly in the sight of his pursuers from the time he left the vestibule at 1704 Race Street until he was apprehended by the police, and that Green had been "positively identified" after the arrest as the man the witnesses had pursued. The affidavits of various witnesses were submitted to demonstrate that, if trial counsel had interviewed those witnesses, he would have realized that the case against Green was too weak to justify entry of a guilty plea. It is contended, therefore, that trial counsel's failure to interview the witnesses constituted incompetent performance.

The only affidavits worth discussing are those of Ahrenholz and Egan.[7] The Ahrenholz affidavit, executed in California on July 12, 1974, states in substance: he lived at 1706 Race Street; that on September 17, 1962, as he was about to go to work on his motorcycle, he heard banging from the hallway of 1704 Race Street; he went to the door, saw a female being beaten by a male; he held the door and shouted for police help; a black male ran out of the apartment toward 17th and Race Streets; Ahrenholz got onto his motorcycle and attempted to chase the fleeing man, but lost sight of him; within a matter of seconds police vehicles arrived and, believing his assistance was no longer needed, Ahrenholz went on to work; at about 1:30 a. m., while on his lunch break, Ahrenholz went to the police station and gave a statement; after he gave the statement, the detective showed him a person with two or three golf ball size lumps on his head; that he inquired how the man had received the lumps and the detective told him that the man had resisted arrest and was subdued by the police; that "[a]nother gentleman at the station house who I took to be an undercover policeman stated . . . I believe in an effort to please me . . . that I should be glad to know that the 'night shift got him and the next shift will take their turn on him.' I took this to mean that he was being beaten at the time and would probably be beaten by the next shift."

5. Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964).

6. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

7. The affidavit by relator's present counsel's secretary reports that she communicated with the victim, who reaffirmed the prior statement she made to the police that she could not identify her attacker; that she was cut by a ring her attacker was wearing; and that she had not been interviewed or questioned by trial counsel. The secretary's affidavit went on to state that she asked Green if he wore any jewelry that night and he told her that he wore no jewelry at that period in his life. This totally hearsay affidavit contributes nothing to the case. Whether the attacker did, or did not, wear a ring, has never been an issue in the case.

Egan's affidavit, notarized on June 13, 1974,[8] reports that he and Strohmetz, accompanied by their dates, were driving along Race Street in Egan's car about 9:30 p. m. on September 17, 1962; that Egan saw a Negro male run across the street about twenty-five feet in front of the car; Egan hit his high-beams to get a better view but "was unable to see the full face of the assailant as he ran across Race Street"; that Strohmetz ran to the aid of the young woman who collapsed in his arms while Egan attempted to pursue the assailant in his car but lost him completely; that Egan waited with a policeman until the assailant was caught; at the hospital a policeman told Egan that the police had severely beaten the gentleman they had captured; that Egan asked him how the police "could just beat him" and was told that this could be done by charging that he had resisted arrest; that "this policeman told me that Mr. Green did offer himself to the police voluntarily, in other words, he did not resist arrest"; that Egan didn't tell this to anyone at the time because he had no sympathy for "the man who I believe had attacked" the victim; that he saw Green at the hospital where he was being treated along with the victim; that he saw a policeman hit Green twice for no reason at the hospital; that after the doctors finished with Green at the hospital, Green had two patches on his head, but at the preliminary hearing the next morning, Green had three patches on his head; that his friend, Strohmetz, after attending to the victim, had also attempted to follow the assailant on foot.

The affidavits were submitted to demonstrate that the Police Report was inaccurate in that (1) Ahrenholz did not have Green "continually" in his view, and (2) Egan had not "positively identified" Green as the assailant. The affidavits were intended further to establish that Green had been physically abused by the police after he was taken into custody.

There are several difficulties with relator's position. First, the information in the Police Report has been distorted. In Ahrenholz' affidavit he states: "I understand [9] that the Police Report quotes me as saying I followed the attacker continually until he was apprehended. This is factually not true."

I have examined the Police Report carefully and nowhere in the Report is Ahrenholz so quoted. The sequence of events as therein recorded and as purportedly related by Ahrenholz to the police, contains such a confusion of references to both pursuer and pursued as "he" and "him" that it would be most difficult to interpret the Report as relator would now have it interpreted, i. e. as a statement by Ahrenholz that he had Green "continually" in his view. Fairly interpreted, Ahrenholz' information to the police concerning the man he had been pursuing led the police to the *area* of 17th and Wood Streets where, after a search, Green was found hiding on a rooftop. Certainly an experienced criminal lawyer would not have taken it for more than that.

Second, with respect to the "positive identification" allegedly attributed to Egan, the Police Report contains what appears to be the product of a joint interview of Strohmetz and Egan, referring to what "they" saw and what "they" did. The report of the interview contains the statement: "They saw the man & he was the same man the police apprehended." Egan's 1974 affidavit states only that he was unable to see the "full face of the assailant as he ran across Race Street." It does not state that neither he nor Strohmetz said anything to the police on September 17, 1962 to warrant the statement in the Report: "They saw the man & he was the same man the police apprehended."

Third, the affidavits of Ahrenholz and Egan are conflicting in their descrip-

---

8. Following Egan's signature appears "5/31/74" without explanation.

9. The source of the understanding is not disclosed.

tions of Green's physical appearance at the police station and at the hospital following the arrest. The inconsistencies are quite understandable, considering that these men were giving their recollections of details of events which had transpired twelve years before, but they nevertheless raise questions as to the accuracy and reliability of the present recollections of stale events.

Finally, there are inconsistencies between the statements made in these affidavits and Green's own testimony relating to these events. For example, Egan states that he saw the police strike Green at the hospital, and that, whereas Green had had two patches on his head after the doctors treated him at the hospital, there were three patches on his head at the preliminary hearing the next morning. The clear implication is that Green was beaten by the police after he had been treated at the hospital. Ahrenholz' affidavit speculates that Green had been beaten by the police on one shift at the police station and that he would be beaten by the police on the next shift. Green, on the other hand, in his testimony at the PCHA hearing, made no mention of being struck at any time or at any place other than while he was being apprehended after jumping down from the roof at 17th and Wood Streets.

Considered from any point of view, or from any interpretation, the supplemental material submitted to this court does not establish that the interviewing of witnesses would have led to any different advice by trial counsel. At most, if trial counsel had been armed with the information contained in the affidavits he could have asked some interesting questions on cross-examination if the matter had gone to trial, but the evidence of guilt would nevertheless have been overwhelming.

Green contends, and he so testified at the PCHA hearing, that on the day of trial he told trial counsel that he was in-

nocent, and that he had given the statement only because of police coercion, but that trial counsel told him that, since he had given the statement, there was nothing he could do except to plead guilty. In the letters submitted with the stipulations, trial counsel reported that, as of the date of writing the letters, he had no independent recollection of the case, but that if Green had reported to him the alleged circumstances surrounding the giving of the statement, he would not have permitted the entry of a plea but would instead have gone to trial and attempted to attack the confession. The state record reflects that trial counsel had reviewed the statement and the Police Report, and that he went over the statement with Green on the day of the trial; [10] that trial counsel had had a "long talk" with Green and his family (N.T. Plea Proceeding 5); and that trial counsel was familiar with the facts relating to the charges and with Green's background when he advised him to plead guilty.

■ After careful review of the entire state record and of the supplementary material submitted to this court, I am satisfied that the plea was validly entered with the competent advice of counsel. McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). Relator has not demonstrated that the advice he received from trial counsel was outside the standards set forth in *McMann*. United States ex rel. Davis v. Johnson, 495 F.2d 335, 342 (3d Cir. 1974). Moreover, relator would not have carried his burden even if he had demonstrated "that if counsel has pursued a certain factual inquiry such a pursuit would have uncovered a possible constitutional infirmity in the proceedings." Tollett v. Henderson, 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973).

Essentially, the supplementary material does not detract from the pivotal fact that relator was found to be not credible

---

10. Trial counsel had seen Green briefly on two other occasions when the case was postponed. (N.T. PCHA 15).

in his claim that he had been coerced into giving the statement. In light of this fact, nothing contained in the affidavits would have warranted trial counsel recommending any other course than the entry of the plea of guilty. The performance of trial counsel did not fall below the level of normal competency prevailing in Philadelphia in 1962. United States v. Moore, 432 F.2d 730 (3d Cir. 1970).