Robert Lee SANDS and Opal
T. (Turner) Sands

v.

Jim ROSE, Warden, Penny Barnhart,
Warden.

Civ. No. 3–74–367.

United States District Court,
E. D. Tennessee, N. D.

Feb. 11, 1975.

Robert Lee Sands, pro se.

W. Henry Haile, Asst. Atty. Gen., Nashville, Tenn., for defendants.

MEMORANDUM

ROBERT L. TAYLOR, District Judge.

Petitioners are prisoners in the custody of the State of Tennessee who are seeking habeas corpus relief pursuant to 28 U.S.C. § 2241 *et seq.* They were tried in July 1972 as co-defendants in a prosecution for armed robbery in the Circuit Court for Union County, Tennessee. They were convicted by a jury and

were sentenced to ten years in the penitentiary. The Court of Criminal Appeals affirmed their convictions on July 26, 1973, and certiorari was denied by the Supreme Court of Tennessee on November 19, 1973. The Attorney General admits in his answer that petitioners have exhausted their remedies with respect to the issues raised in their application for habeas corpus relief. Petitioners contend that they are in custody in violation of their federal constitutional rights on the following grounds:

(1) An involuntary confession was admitted into evidence.

(2) Petitioners were denied due process of law because their counsel was not permitted proper latitude in cross-examining the State's only eyewitness—W. L. Satterfield.

(3) Petitioners were denied due process of law because their counsel was not allowed to introduce testimony concerning certain prior inconsistent statements made by the eyewitness.

(4) There was no evidence whatsoever to support the verdict.

These contentions will be discussed seriatim.

### Admissibility of the Confession

Petitioners were convicted of the armed robbery of W. L. ("Fate") Satterfield at his Union County, Tennessee, home on the evening of October 8, 1970. Mr. Satterfield was robbed of some fifty or sixty dollars and a shotgun. A woman forced her way into his house at gunpoint and a male accomplice then entered the house and assisted in the robbery.

Petitioners signed a written confession to the robbery on April 29, 1971, while they were both being held in the Campbell County jail on unrelated charges of armed robbery.[1] The Attorney General does not attempt to minimize the importance of the confession to the State's case. He states in his answer: "The petitioners were convicted largely on their own confessions and on the testimony of their 91 year old victim."

The record shows that prior to the date of the confession Petitioner Robert Sands wrote a letter to the Sheriff of Union County, Von Richardson, requesting that the Sheriff talk to him about the Satterfield robbery.[2] Mr. Sands maintains, as he did in the state courts, that he wrote the letter in an effort to secure a transfer to the Union County jail for himself and Mrs. Turner (now Mrs. Sands)[3] where he felt that they would receive adequate medical treatment. Mr. Sands was taking medication for a nervous disorder and heart condition and Mrs. Turner had been scalded on her chest with hot coffee at some time prior to the confession and while in the Campbell County Jail. Petitioners contend now, as they did in the state courts, that they were unable to get proper medical treatment at the Campbell County Jail and confessed in order to secure a transfer to the Union County Jail.

---

1. The confession provided in substance that Petitioner Turner went to Mr. Satterfield's door and told him she needed water for her car but that once inside his home she forced him to lie on the floor with his head covered with a sweater. Petitioner Robert Sands then entered the house and robbed Mr. Satterfield and pulled the telephone connection out of the wall. There was no mention in the confession of the weapon used in the robbery. Trial Transcript 53–54.

2. Robert Sands had known Sheriff Richardson for some time and he testified that the Sheriff had "always been good to me" and that the Sheriff "could help me." Hearing Transcript 4. The letter was not produced at the hearing on the motion to suppress the confession and it was established at trial that Sheriff Richardson could not locate it. Trial Transcript 8. Mr. Sands admitted at trial, however, that the letter stated that he had information about the Satterfield robbery. Trial Transcript 80.

3. Although the record is not clear on the point, petitioners were sweethearts up to and including the time of trial and are now apparently married.

A hearing on the motion to suppress the confession was held before the trial court on June 8, 1972, and the Court heard the petitioners' contentions that the confession was involuntary. Sheriff Richardson, Sheriff Kitts of Campbell County, and Agent Watson of the Tennessee Bureau of Criminal Identification were present when the confession was taken. Sheriff Richardson testified for the prosecution at the hearing and all three officers testified at trial. Sheriff Richardson testified at the hearing that Mr. Sands was in "good physical condition" when he signed the confession. Hearing Transcript 29. He also testified that Mrs. Turner told him she had been scalded. *Id.* He further testified that the confession was signed voluntarily after petitioners were warned of their constitutional rights, and that there was no agreement to return petitioners to Union County in exchange for their confession. Hearing Transcript 27, 39.

The trial court held that the confession had been made voluntarily, although it did criticize the prosecutor for not producing the two other law enforcement officers and the letter which was sent to Sheriff Richardson. Hearing Transcript 40–41.

It is clear from the record that conflicting factual issues were presented to the trial court on the issue of voluntariness and these issues were resolved in the prosecution's favor. Had the trial court believed petitioners' allegations, we can be reasonably certain that it would have granted the motion to suppress the evidence. *See LaVallee v. Delle Rose,* 410 U.S. 690, 695, 93 S.Ct. 1203, 35 L.Ed.2d 637 (1973). In the application for habeas corpus relief, petitioners raise the same allegations as they did before the trial court.

■  There is no constitutional requirement that a state trial court articulate its credibility findings involving a factual dispute over the voluntariness of a confession. *LaVallee, id.* at 692, 93 S.Ct. 1203. The trial court complied with the hearing requirements specified in *Jackson v. Denno,* 378 U.S. 368, 84 S. Ct. 1774, 12 L.Ed.2d 908 (1964), before allowing the confession to be put into evidence.

■  The Court has independently reviewed the record and is of the opinion that the petitioners were given a constitutionally adequate hearing on the voluntariness of their confession based on the "totality of the circumstances" revealed in the record. *Schneckloth v. Bustamonte,* 412 U.S. 218, 226, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *LaVallee,* supra; *Jackson,* supra.

"The Due Process Clause does not mandate that the police forego all questioning, nor that they be given carte blanche to extract what they can from a suspect. 'The ultimate test remains that which has been the only clearly established test in Anglo-American courts for two hundred years: the test of voluntariness. Is the confession the product of an essentially free and unconstrained choice by its maker? If it is, if he has willed to confess, it may be used against him. If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process.'" (citation omitted). *Schneckloth,* supra, at 225–26, 93 S.Ct. at 2047.

■  Important circumstances surrounding the taking of the confession here in question include the fact that Mr. Sands himself contacted Sheriff Richardson about discussing the Satterfield robbery. Sheriff Richardson testified that no agreement was made to transfer petitioners to Union County if they would sign the confession and that they were transferred because the criminal court met in Union County before the next court in Campbell County. Hearing Transcript 31. There is no evidence in the record that the questioning took place for an extended period of time or that other "third-degree" methods were used. Sheriff Richardson also testified that petitioners were advised of

their constitutional rights before the questioning began.[4] Hearing Transcript 27.

### Denial of due process in limiting defense counsel's cross-examination of the State's only eyewitness

■ Assuming, without deciding, that this is a cognizable claim in an application for habeas corpus relief, this contention is without factual basis. Mr. Satterfield was cross-examined at length by defense counsel, Trial Transcript 34–49, and he was recalled twice for re-examination by defense counsel. Trial Transcript 67–69; 128.

### Denial of due process in restricting testimony concerning prior inconsistent statements of the State's eyewitness

Defense counsel failed to lay a proper foundation for testimony by Della Patterson and Jack Sweet that would have shown that Mr. Satterfield had made several prior inconsistent statements about the identity of the persons who robbed him. Trial Transcript 113–121. Defense counsel was allowed to recall Mr. Satterfield, however, and later introduced the impeaching testimony through Della Patterson. Trial Transcript 132–136.

■ Under the Due Process Clause the state courts have "wide latitude in fashioning rules of evidence and procedure." *Bassett v. Smith*, 464 F.2d 347, 351 (5th Cir.), *cert. den.*, 410 U.S. 991, 93 S.Ct. 1509, 36 L.Ed.2d 190 (1973). In *Manning v. Rose*, 507 F.2d 889 (6th Cir. 1974), the Court of Appeals quoted the following passage with approval:

"The question of admissibility of evidence usually is a matter of state law and procedure and does not involve federal constitutional issues. And ordinarily habeas corpus being a collateral attack is not considered to be a proper remedy for correcting errors in trial procedure. It is only when the trial errors or irregularities infringe upon specific constitutional protection or are so prejudicial as to amount to a denial of due process that a justiciable federal issue is presented in a habeas corpus proceeding." *Atwell v. Arkansas*, 426 F.2d 912, 915 (10th Cir. 1972) (citations omitted).

■ In the instant case the jury was well aware that Mr. Satterfield had made prior inconsistent statements about the identity of his assailants. Thus, even if it is assumed that defense counsel was unduly restricted in introducing impeaching testimony, little, if any, prejudice resulted. The record shows that the jury was told that Mr. Satterfield gave erroneous information to the police after the robbery that resulted in warrants for two persons other than petitioners. Furthermore, Sheriff Richardson testified at trial that Mr. Satterfield told him later that some people by the name of Grubb were the robbers.

### There was no evidence to support the conviction

■ This final contention is without merit. This contention is proper on direct appeal but not in a collateral proceeding. See *Ballard v. Howard*, 403 F. 2d 653 (6th Cir. 1968).

Accordingly, it is ordered that the petition for habeas corpus relief be, and the same hereby is, dismissed.

---

4. Although the point is not urged in the application for habeas corpus relief as it was on direct appeal, the Court has noted that Sheriff Richardson did not testify that he advised petitioners of their right to the *presence* of counsel during interrogation as is required by *Miranda v. Arizona*, 384 U.S. 436, 479, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Hearing Transcript 27. The full measure of procedural safeguards in *Miranda* were not intended to create "'a constitutional straightjacket' . . . but rather to provide practical reinforcement for the right against compulsory self-incrimination." *Michigan v. Tucker*, 417 U.S. 433, 444, 94 S. Ct. 2357, 2364, 41 L.Ed.2d 182 (1974). Moreover, *Miranda* does not purport to bar confessions which are voluntarily made. *Miranda*, supra, 384 U.S. at 478, 86 S.Ct. 1602.