Loal Junior JOINER, Appellant,

v.

Donald W. WYRICK and John D. Ashcroft, Appellees.

No. 78–1645.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 9, 1979.

Decided March 16, 1979.

Robert O. Appleton, Jr., St. Louis, Mo., for appellant.

Michael H. Finkelstein, Asst. Atty. Gen., Jefferson City, Mo., for appellee; John D. Ashcroft, Atty. Gen., Jefferson City, Mo., on brief.

Before GIBSON, Chief Judge, and ROSS and McMILLIAN, Circuit Judges.

PER CURIAM.

Loal Junior Joiner appeals from the District Court's [1] denial of his petition for a writ of habeas corpus. Joiner was convicted in a Missouri state court for murder in the first degree and was sentenced to a term of life imprisonment. On appeal he asserts that his state conviction is invalid because of statements unconstitutionally admitted into evidence at his trial.[2] Finding no constitutional error, we affirm.

---

1. The Honorable Edward L. Filippine, United States District Judge, Eastern District of Missouri.

2. Before filing his federal habeas corpus petition, appellant fully exhausted his available state remedies. The Missouri Court of Appeals rejected his contention that the statements were improperly admitted. *State v. Joiner,* 559 S.W.2d 226 (Mo.App.1977).

■ Appellant's first objection concerns the use of a statement allegedly made by appellant to the arresting police officers. Joiner and his cousin, Bobby Joiner, were arrested in Punta Gorda, Florida, and returned by plane accompanied by Deputy Sheriff McDonald and Trooper Plunkett to Dunklin County, Missouri, where an information had been filed charging appellant with first degree murder. While in the custody of McDonald and Plunkett at the Dunklin County jail, appellant Joiner and Bobby Joiner allegedly made oral statements to McDonald and Plunkett. Both suspects were questioned in the presence of each other and in the presence of McDonald and Plunkett. Appellant claims that the police officers illegally coerced him and that, consequently, the state trial court committed constitutional error by admitting the statement into evidence rendering his conviction invalid. *See Jackson v. Denno,* 378 U.S. 368, 376, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

Before trial, counsel for appellant filed a "Motion to Suppress Oral Admission or Confession." The state trial court held a hearing on this motion. Deputy Sheriff McDonald testified to the circumstances surrounding the statement. He testified that before any interviewing, he read to appellant his full *Miranda* warning and asked if he understood his rights. Appellant responded in the affirmative. McDonald also gave a *Miranda* warning to Bobby Joiner and began to interview him. During the interview Bobby Joiner requested to call his mother. Upon concluding the call, he asked to speak to appellant. They caucused in private, then returned to the officers and stated that they wanted to make a statement. Again they were advised of their rights and at this time they signed waivers. McDonald also testified to the substance of the statements made and upon cross-examination he reiterated that appellant knew and understood his rights and that appellant never asked for an attorney or refused to talk until he had a chance to speak to an attorney. McDonald stated that no threats, promises, coercion, or vio-

lence of any sort were used to obtain appellant's signature on the waiver form.

Trooper Plunkett also testified at the suppression hearing. He stated that he heard McDonald read appellant his rights; that appellant said he understood his rights and was advised of them a second time before he signed a waiver form; that no statements were made that appellant could not have the services of a lawyer; and that no threats, promises, coercion, duress or physical force were used to obtain statements from appellant. Plunkett also testified to his recollection of the statements, which was substantially similar to the account given by McDonald.

Appellant testified at the hearing that he did not make any statements and signed the waiver form under duress and in fear of physical harm. Bobby Joiner was not called to testify.

The state trial judge concluded that appellant had understood his rights that were given to him and that he had voluntarily and intelligently waived them with knowledge and understanding of the consequences. At the trial, over objection, the police officers testified to the substance of the statements.

Appellant asserts that "the factfinding was inadequate," but he does not indicate what further facts could have been adduced or how the procedure accorded him at the pretrial hearings prejudiced him. We find that the preliminary hearing constituted an adequate opportunity to present the trial judge with evidence concerning the voluntariness of appellant's statements. The evidence conflicted and the trial judge necessarily decided the issue on the basis of credibility. *See LaVallee v. Delle Rose,* 410 U.S. 690, 93 S.Ct. 1203, 35 L.Ed.2d 637 (1973); *State v. Anderson,* 384 S.W.2d 591, 604 (Mo. banc 1964).

■ Appellant also challenges the admissibility into evidence of statements made by Bobby Joiner on the basis that their admission deprived him of due process and violated his privilege against self-incrimination

and his right to confrontation of witnesses. The statements of Bobby Joiner were admitted into evidence as adoptive admissions.

At the pretrial suppression hearing the police officers testified that appellant and Bobby Joiner made a joint statement. McDonald stated that "both of them gave it together. One would talk; the other one would talk and they would agree that was the way it occurred." At trial the police officers testified to statements made by Bobby Joiner that were affirmatively adopted by appellant. Appellant contends that the state trial court conducted insufficient factfinding on the issues of whether these statements were actually adopted by appellant and whether they were freely and voluntarily made.

■ It is apparent from the record that the scope of the preliminary suppression hearing encompassed the statements spoken by Bobby Joiner as well as those spoken by appellant. Whether Bobby Joiner gave the statements freely and voluntarily is not relevant and the failure of the trial court to make a formal finding regarding this was not incorrect. The trial court did find that appellant voluntarily waived his rights prior to the giving of the joint statement. In the context of the motion to suppress, this necessarily included a finding that appellant freely and voluntarily adopted those portions of the joint statement spoken by Bobby Joiner. At trial the trial court's prerequisites for determining adoption were clarified, and defense counsel did not object that these prerequisites were insufficient to constitute adoption.[3] Furthermore, appellant could not have been prejudiced by the admission of Bobby Joiner's statements because they gave an account of the events surrounding the murder that was substantially identical to the account given in the statements spoken by appellant that were properly received as evidence. The physical facts are supportive of the officers' testimony on appellant's admissions and statements made after proper *Miranda* warnings were given.

We affirm the District Court's dismissal of appellant's federal habeas corpus petition.

---

3. The trial transcript reveals the following colloquy with McDonald as the witness:

Q. During that statement of Bobby Ray Joiner, did you direct any questions to Loal Junior Joiner concerning Bobby Joiner's statement?

A. Yes, sir.

Q. What questions did you direct to Loal?

A. Whenever Bobby would make a statement, we would ask Loal Joiner if that was the way it happened.

Q. What would be his response?

A. Loal Joiner would nod his head and then I would direct him, I would say, "Loal, does that mean yes, that this is the way it happened?"

Q. What would he say to that?

A. He would say, "Yes, that's the way it happened."

Q. At any time during the statement of Bobby Ray Joiner did this defendant, Loal Joiner, disagree with anything that Bobby Ray Joiner was stating?

A. No, sir.

Q. Tell the court and jury what statements Bobby Ray Joiner made to you in the presence of Loal Joiner, under the circumstances you have just described, regarding the death of John Frank Holder.

MR. BEATON: I'll object to that as hearsay and object to that on the grounds that it denies the right to confront Bobby Joiner with the statements or questions and question him about it also.

THE COURT: It is my understanding the question is directed only to the comments made by Bobby Joiner which were affirmatively approved by the defendant, Loal Joiner, and as to those particular statements, the objections will be overruled.

Q. Deputy Sheriff, the Court has told you that you may answer concerning the statements of Bobby Joiner made in the presence of Loal Joiner, which Loal Joiner affirmatively agreed to and nodded his head but told you, "Yes, the nod means yes." Is that correct, Your Honor?

THE COURT: Yes.

Q. Would you state what statements Bobby Ray Joiner made to you under those circumstances?