**UNITED STATES of America ex rel. John SULLIVAN, Petitioner,**

v.

**Julius T. CUYLER, Superintendent, State Correctional Institution, Graterford, Pennsylvania, and The District Attorney of Philadelphia County, Respondent.**

Civ. A. No. 77-2527.

United States District Court,
E. D. Pennsylvania.

Feb. 3, 1982.

## MEMORANDUM AND ORDER

JOHN MORGAN DAVIS, Senior District Judge.

By ORDER on March 17, 1981 this court granted respondent's motion to proceed with this petition for habeas corpus upon the state court record. Accordingly, the court cancelled the evidentiary hearing which was originally scheduled for November 20, 1980.[1] After yet another review of the extensive state court record in this case in order to assess the merits of petitioner's claims, I find it necessary to reconsider my prior ruling *sua sponte*. The sole issue before the court is whether an evidentiary hearing must be held in order to address the merits of petitioner's constitutional challenge to his murder conviction in state court.[2]

The procedural history of this case is exhaustively set forth in the prior opinions of the Supreme Court, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333,[3] and the Third Circuit Court of Appeals, 593 F.2d 512, 631 F.2d

---

1. This hearing was continued to December 16, 1980 at the request of the petitioner whereupon the court entertained respondent's motion to proceed solely on the state court record. After oral argument on January 29, 1981 and submission of supplemental briefs, the court granted respondent's motion and heard the case on the merits. Additional briefs were then filed and the court heard oral argument on June 9, 1981. Thereafter, the petitioner filed a consolidated discovery motion and a motion to strike which was heard in open court on November 6, 1981. The latter motion prompted an order by the court which respondent complied with on December 18, 1981.

2. The constitutional issue presented is whether petitioner's trial counsel labored under an actual conflict of interest which adversely affected their performance; thus, violating the petitioner's right to effective assistance of counsel under the Sixth Amendment. The alternative constitutional grounds asserted for habeas corpus relief do not require an evidentiary hearing.

3. *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980).

14.[4] Only several lower court rulings, however, are relevant to the inquiry now before the court.

After his conviction was affirmed by the Pennsylvania Supreme Court,[5] the petitioner sought collateral relief under the Pennsylvania Post Conviction Hearing Act (P.C. H.A.).[6] Five days of hearings were held by learned Judge Doty; Sullivan, Carchidi, Peruto, Judge DiBona, and the trial judge, as well as several other witnesses testified. The testimony presented at the hearing was inherently conflicting.[7]

■ Upon consideration of the petition, the P.C.H.A. court, per Doty, J., held that Sullivan could take a second direct appeal because counsel had not adequately assisted him in his first appeal.[8] On appeal, the

4. *United States ex rel. Sullivan v. Cuyler*, 593 F.2d 513 (3d Cir. 1979), rev'd 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980).

5. The affirmance was by an equally divided vote. *Commonwealth v. Sullivan*, 446 Pa. 419, 286 A.2d 898 (1971). During the pendency of his appeal in the State Supreme Court, petitioner's pro se petitions for federal habeas corpus relief were dismissed for failure to exhaust state remedies.

6. Pa.Stat.Ann. Tit. 19 § 1180-1 et seq. (Purdon 1979–80).

7. The portions cited by the Supreme Court are illustrative without complete recitation of the conflicts in testimony. See, e.g., *Cuyler v. Sullivan, supra*, 446 U.S. at 339, 100 S.Ct. at 1713.

8. The significance of the P.C.H.A. court's other findings is disputed, and is discussed infra, at n.18 and accompanying text.

9. *Commonwealth v. Sullivan*, 472 Pa. 129, 371 A.2d 468 (1977).

10. Id. at 161, 371 A.2d at 483. The court found that Peruto merely assisted DiBona in the Sullivan trial. Id.

11. Id. The text of the court's opinion reads as follows:
Upon review of the record from the P.C.H.A. proceedings, we find appellant has failed to prove the requisite elements of his claim. First, the testimony established that there was no dual representation in the true sense of the term, i.e., the same counsel actively represented co-defendants. Mr. Peruto testified that it was Mr. (now Judge) DiBona who served as chief counsel for appellant during trial and made all decisions relevant to Sulli-

Pennsylvania Supreme Court, once again, affirmed petitioner's original conviction and the denial of collateral relief.[9] In assessing the merits of the conflict of interest claim, the court concluded that there was "no dual representation in the true sense of the term," since Judge DiBona served as chief trial counsel.[10] Relying on Judge DiBona's testimony that his stewardship was unaffected by considerations of the co-defendants' cases, the court summarily found no basis for the claim that counsel at trial were ineffective.[11]

■ The final phase of the procedural history of this case as it volleyed from this court to the Supreme Court and back need not be reiterated here.[12] The question

van's defense while he, Peruto, was merely assisting. These functions were reversed at the trial of the co-defendants where Mr. Peruto was chief counsel and Judge DiBona the assistant. Thus, Judge DiBona served only a minor role in the trial of the co-defendants while devoting his primary efforts to the Sullivan case. This conclusion is supported by Judge DiBona's statements that his stewardship was in no way affected by the consideration of the co-defendant's cases but was solely a product of what he considered to be the best course in his representation of Sullivan. We therefore hold that there is absolutely no evidence that a conflict existed.
Of course, findings of fact made by state appellate courts are considered "determination[s] after a hearing on the merits of a factual issue" within the meaning of 28 U.S.C. § 2254(d) and as such are entitled to the presumption of correctness mandated by the statute. *Sumner v. Mata*, 449 U.S. 539, 544–546, 101 S.Ct. 764, 768, 66 L.Ed.2d 722 (1981). Whether the Pennsylvania Supreme Court's opinion constitutes a finding of fact on the issue presented on remand from the Third Circuit, i.e., conflict of interest which infected trial counsel, must be determined in light of both the opinions of the Supreme Court and Third Circuit in this case. See *infra* at n.28 and accompanying text.

12. Suffice it to say that the Court vacated the judgment of the court of appeals and remanded the case in light of the new standard for a conflict of interest to render counsel ineffective for 6th Amendment purposes as enunciated in *Sullivan*. Thereupon, the court of appeals remanded the case to this court "so that it may be considered in light of the Supreme Court's decisions ..." of *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980) and *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781,

presented *sub judice* depends upon whether the petitioner received a full and fair hearing on his constitutional claims in a state court. And this question in turn requires an analysis of the state court record and legal issues presented therein. Furthermore, I embark on this analysis cognizant of the nature of federal habeas corpus as a "source of friction between state and federal courts." *Sumner v. Mata*, supra, 101 S.Ct. at 770. Notwithstanding this possible friction in federal-state relations, I am also mindful of the role which habeas corpus plays in safeguarding the liberty of all persons against infringement through any violation of the Constitution. *Hawk v. Olson*, 326 U.S. 271, 274, 66 S.Ct. 116, 118, 90 L.Ed. 61 (1945).

*Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963) sets forth the criteria for determining when a federal habeas court may adopt the factual findings of a state court without conducting an evidentiary hearing.[13] *Harris v. Oliver*, 645 F.2d 327, 330 (5th Cir. 1981); *Montes v. Jenkins*, 581 F.2d 609, 611 (7th Cir. 1978). The ninth circuit eloquently stated; "[T]he existence of a full and fair hearing on constitutional claims under federal standards is the keystone of the undeniable wall protecting the finality of a prior state habeas adjudication. In its absence, that wall crumbles." *Silverton v. Department of Treasury, etc.*, 644 F.2d 1341, 1346 (9th Cir. 1981). Defining the nature of a full and fair hearing, the court in *Townsend* elaborated stating:

We hold that a federal court must grant an evidentiary hearing to a habeas applicant under the following circumstances: If (1) the merits of the factual dispute were not resolved in the state hearing: (2) the state factual determination is not fairly supported by the record as a whole: (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing: (4) there is a substantial allegation of newly discovered evidence: (5) the material facts were not adequately developed at the state-court hearing: or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing.

*Townsend v. Sain*, 372 U.S. at 313, 83 S.Ct. at 757. It is not necessary to embark upon an extended trek through each category, since the first provides ample guidance for resolution of the issue at bar on the record before the court.

The presumption of correctness in § 2254(d) presupposes reliable fact-finding by the state court. "[A] federal evidentiary hearing is required unless the state-court trier of fact has, after a full hearing, reliably found the relevant facts." Id. at 312–13, 83 S.Ct. at 356 (footnote omitted); *LaVallee v. Delle Rose*, 410 U.S. 690, 692, 93 S.Ct. 1203, 1204 (1973).[14] The relevant factual findings which are entitled to deference are those "basic, primary or historical facts 'in the sense of a recital of external events and the credibility of their narrators . . .'." *Townsend v. Sain*, supra, 372 U.S. at 309 n.6, 83 S.Ct. at 755 n.6 (quoting

---

61 L.Ed.2d 560 (1979). *United States ex. rel. Sullivan v. Cuyler*, 631 F.2d 14, 16 (3rd Cir. 1980).

**13.** While the standards of *Townsend* have been incorporated in 28 U.S.C. § 2254(d), four justices take the view that the question of whether a hearing is appropriate is controlled exclusively by *Townsend* even after the enactment of § 2254(d). See *LaVallee v. Delle Rose*, 410 U.S. 690, 695, 701 n.2, 93 S.Ct. 1203, 1205, 1208 n.2, 35 L.Ed.2d 637 (1973) (Marshall, J., dissenting). This position seems correct, although I need not reach the precise question in view of the disposition herein. See *Guice v. Fortenberry*, 661 F.2d 496, 501 (5th Cir. 1981). The parties apparently concede that *Townsend* gov-

erns however, its application to this case and particular language are not adequately explored by the parties. Therefore, I will not set forth the arguments propounded by counsel at length since many do not address the core problem with the state court record before the court.

**14.** See also, *Guice v. Fortenberry*, supra, 661 F.2d at 500; *Harris v. Oliver*, supra, 645 F.2d at 330; *Taylor v. Cardwell*, 579 F.2d 1380, 1382 (9th Cir. 1978); *United States ex. rel. Williams v. LaVallee*, 487 F.2d 1006, 1010–16 (2d Cir. 1973), cert. denied, 416 U.S. 916, 94 S.Ct. 1622, 40 L.Ed.2d 118 (1974).

*Brown v. Allen,* 344 U.S. 443, 506, 73 S.Ct. 397, 445, 97 L.Ed. 469 (1953)).[15] In sum, deference to state court findings is permissible only when the state tribunal has actually resolved disputed issues of fact in deciding the merits of the constitutional claim tendered by the petitioner.

Further defining the nature of adequate resolution of disputed facts as set forth in the first *Townsend* criteria the court stated:

> There cannot even be the semblance of a full and fair hearing unless the state court actually reached and decided the issues of fact tendered by the defendant. Thus, if no express findings of fact have been made by the state court, the District Court must initially determine whether the state court has impliedly found material facts. *No relevant findings have been made unless the state court decided the constitutional claim tendered by the defendant on the merits. . . .* If the state court has decided the merits of the claim but has made no express findings, it may still be possible for the District Court to reconstruct the findings of the state trier of fact, either because his view of the facts is plain from his opinion or because of other indicia. In some cases this will be impossible, and the Federal District Court will be compelled to hold a hearing.
>
> Reconstruction is not possible if it is unclear whether the state finder applied *correct* constitutional standards in

disposing of the claim. Under such circumstances the District Court cannot ascertain whether the state court found the law or the facts adversely to the petitioner's contentions. Since the decision of the state trier of fact may rest upon an error of law rather than an adverse determination of the facts, a hearing is compelled to ascertain the facts.

*Townsend v. Sain, supra,* 372 U.S. at 313–14, 83 S.Ct. at 757 (emphasis added).

Thus, the first question is whether the claim of conflict of interest was reached and decided by the state courts. Reviewing the opinion of the P.C.H.A. court, it becomes clear that the court did not actually reach the merits of the conflict claim tendered by the respondent; therefore, "no relevant findings" which are entitled to deference were made by the P.C.H.A. court.

After a hearing at which evidence was adduced concerning an alleged conflict of interest as well as other claims, Judge Doty filed an opinion which is now part of the record before this court.[16] The Court of Common Pleas merely held that the petitioner had been denied effective assistance of counsel on appeal and permitted him to file a second direct appeal to the Pennsylvania Supreme court.[17] The court did, however, make several other rulings [18] with respect to other issues raised by the petitioner. Respondent forcefully argues that

---

15. Accord, *Cuyler v. Sullivan, supra,* 446 U.S. at 342, 100 S.Ct. at 1715; *Mata v. Summer,* 649 F.2d 713, 716 n.6 (9th Cir. 1981); *United States ex rel. Sullivan v. Cuyler, supra,* 593 F.2d at 518. See also, *Universal Minerals, Inc. v. C. A. Hughes & Co.,* 669 F.2d 98, 102–103 (3rd Cir. 1981).

16. This opinion, which was filed on November 6, 1974, only recently became part of the record before this court. Thus, my prior ruling was made without the benefit of an analysis of the precise grounds for Judge Doty's rulings.

17. In so holding, the court credited Mr. Peruto's testimony that he neither filed a brief in the Supreme Court of Pennsylvania on behalf of the petitioner nor requested oral argument on the initial direct appeal.

18. The relevant findings made by the P.C.H.A. court are:

5. Failure of the defendant to take the witness stand. Judge DiBona testified that the defendant was fully consulted concerning his right to testify and that the decision of defendant not to testify was made jointly by counsel and the client. We see no question of ineffective assistance of counsel here.

7. After-discovered evidence: defendant contends that he had witnesses who should have been called on his behalf. It is our opinion that defendant has failed to meet the tests required for relief on this ground. See, *Commonwealth v. Schuck,* 401 Pa. 222, 164 A.2d 13 (1960). Defendant raises a number of other contentions in proceedings before us but all of this can be covered in the arguments in the Supreme Court.

Opinion, per Doty, J., at 8–9.

these rulings represent an adverse determination on the merits of petitioner's claim of conflict of interest which is now binding on this court. Respondent errs.

Simply stated, this argument is foreclosed by the prior opinion of the Supreme Court. In the course of assessing the procedural history of this case, the Court in *Sullivan* noted that the P.C.H.A. court "*did not pass directly on the claim that defense counsel had a conflict of interest . . .*" [19]. Furthermore, the Court emphasized this point when it addressed the issue of the applicability of the presumption of correctness under § 2254(d) to the state court's ruling that no multiple representation occurred. It stated: " . . . the state court that heard evidence on Sullivan's petition for collateral relief did not decide whether defense counsel had represented conflicting interests." *Cuyler v. Sullivan, supra,* 446 U.S. at 341

n.5, 100 S.Ct. at 1714 n.5. Where the decision of the state trier is not on the merits of the constitutional issue, no fact-findings could have been made.[20] Hence, no relevant finding of fact, which can be accorded the presumption of correctness under § 2254(d), was made by the P.C.H.A. court because that court did not squarely address the conflict of interest claim. Accordingly, as in the Supreme Court, the respondent must rely solely on the findings articulated in the opinion of the Pennsylvania Supreme Court to support its argument that Sullivan received as full and fair hearing on his constitutional claims.[21]

*Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981) dictates that the "presumption of correctness" mandated by § 2254(d) must be applied to factual determinations made by state appellate courts.[22] Relying on *Sumner,* the respondent argues

---

19. *Cuyler v. Sullivan, supra,* 446 U.S. at 339, 100 S.Ct. at 1713 (emphasis added). The P.C.H.A. court merely found that " . . . counsel fully advised Sullivan about his decision not to testify." *Id.* See *supra* at n.17.

   At this juncture, I note that finding No. 7 of Judge Doty is based purely on state grounds; therefore, I reject the respondent's argument that this finding should be accorded the presumption of correctness in § 2254(d). It is undeniable that the P.C.H.A. court did not consider the constitutional claim of conflict of interest in making this finding.

20. "Even if no express findings are made and may still be possible for the federal court to rely solely on facts implicitly found *provided that the constitutional claim was decided* on the merits." *Harris v. Oliver, supra,* 645 F.2d at 340 (emphasis added). See also, *Townsend v. Sain, supra,* 372 U.S. at 314, 83 S.Ct. at 757; Wright and Sofaer, Federal Habeas Corpus for State Prisoners; The Allocation of Fact-Finding Responsibility, 75 Yale L.J. 895, 936 (1966).

21. Assuming arguendo that the P.C.H.A. court actually decided the conflict of interest claim in the context of its finding that "we see no question of ineffective assistance of counsel here," see *supra* at n.17, such a conclusion does not preclude additional fact-finding by this court. Initially, reconstruction of historical facts from this finding is not possible since the P.C.H.A. court failed to articulate the constitutional standard it applied in deciding the merits. *Townsend v. Sain, supra,* 372 U.S. at 314, 83 S.Ct. at 757. ("Reconstruction is not possible if it is unclear whether the state trier applied the correct constitutional standards in disposi-

tion of the claim"). Merely because the standard for conflict of interest in effect in Pennsylvania at the time of the hearing was similar to that ultimately adopted in *Sullivan, see Commonwealth ex. rel. Whitling v. Russell,* 406 Pa. 45, 176 A.2d 641 (1962), is not a sufficiently compelling reason to sustain wholesale reconstruction of facts from a four line holding in view of the fact that a general Sixth Amendment claim of ineffective assistance of counsel was also presented to the P.C.H.A. court. Thus, it is unclear upon which legal standard the P.C.H.A. court based its decision and reconstruction of facts is rendered impossible. *Townsend v. Sain, supra,* 372 U.S. at 315 n.10, 83 S.Ct. at 758 n.10. See also, Note, Federal Habeas Corpus, 83 Harv.L.Rev. 1038, 1137–38 (1970) ("If the habeas corpus court is not to abandon responsibility for application of law to fact, fact conclusions should not be inferred from recitation of law unless the focus of the original fact is clear and relatively simple"); Wright, supra n.19, at 939. Thus, even if the court reached the merits of the question at bar, I hold that the absence of findings of historical fact coupled with an undecipherable legal standard renders fact reconstruction impossible. See *Guice v. Fortenberry, supra,* 661 F.2d at 506; *Harris v. Oliver, supra,* 645 F.2d at 330–31; *White v. Finkbeiner,* 570 F.2d 194, 201 (7th Cir. 1978); *United States ex. rel. Williams v. LaVallee, supra,* 487 F.2d at 1010–11. Consequently, the merits of the factual disputes were not resolved at the P.C.H.A. hearing within the meaning of 28 U.S.C. § 2254(d)(1).

22. See *supra* at n.11.

that the determination of the Pennsylvania Supreme Court that "there is absolutely no evidence that a conflict existed"[23] is binding on this court. The decision in *Sumner* does not, however, abrogate the requirements set forth in *Townsend v. Sain, supra,* and thereafter embodied in § 2254(d) which mandate an evidentiary hearing. Thus, the relevant inquiry again is whether any of the factors enumerated in *Townsend* are present, rendering the hearing Sullivan received in the appellate court incomplete or unfair.

In his second appeal to the Pennsylvania Supreme Court, the petitioner's claim of conflicted trial counsel was resolved against him on the merits. The court premised its holding on its view that there was "no dual representation in the true sense of the term."[24] The court viewed Peruto as merely assisting DiBona who made all decisions relevant to the defense. And on the basis of Judge DiBona's testimony that no conflict existed, the court found no basis for the claim of conflict of interest. Logically, therefore, the court had no occasion to evaluate Peruto's testimony concerning the compromise of his trial decisions due to consideration of the remaining co-defendants because the court simply did not view Peruto as actively representing Sullivan. Of course, the court's finding that no dual representation existed, which was adopted by this court, was reversed by the Third Circuit[25] and affirmed by a unanimous Supreme Court.[26]

As controlling fact-finding under § 2254(d), the legal significance of this original holding of the Pennsylvania high court is nil. The findings of the state Supreme Court are infected by legal error, i.e., the erroneous view that no multiple representation occurred. The legal error which occurred in the state court is not error in the sense of application of an incorrect constitutional standard. *See e.g., Harris v. Oliver, supra,* 645 F.2d at 329. This legal error can be characterized as an erroneous legal conclusion as to the first stage of the dual inquiry in a conflict of interest case, i.e., (1) whether multiple representation occurred, and (2) whether an actual conflict of interest was present which adversely affected the lawyer's performance. Nevertheless, legal error in assessing the merits of the first inquiry has the same effect as application of an incorrect legal standard. "Under such circumstances the District Court cannot ascertain whether the state court found the law or the facts adversely to the petitioner's contentions." *Townsend v. Sain, supra,* 372 U.S. at 314, 83 S.Ct. at 757. It is the reliability of the prior state process which is speculative. Thus, any historical facts implicitly found by the state appellate court are contaminated by this legal error, and reconstruction of the facts from an erroneous legal holding is impossible. *See Townsend v. Sain, supra,* 372 U.S. at 314, 83 S.Ct. at 757; *Harris v. Oliver, supra,* 645 F.2d at 330–31.

Moreover, the presumption of correctness mandated by § 2254(d) attaches only to determinations of historical fact. *See Cuyler v. Sullivan, supra,* 446 U.S. at 342, 100 S.Ct. at 1715; *White v. Finkbeiner, supra,* 570 F.2d at 201. As I have previously noted, the P.C.H.A. court neither addressed the constitutional issue presented herein, nor

---

23. *Commonwealth v. Sullivan, supra,* 472 Pa. at 161, 371 A.2d at 483. More specifically, the respondent asserts that the high court of the Commonwealth resolved all relevant credibility determinations against the petitioner. This bald statement is plainly incorrect. *See infra* at n.30 and accompanying text.

24. *Commonwealth v. Sullivan, supra,* 472 Pa. at 161, 371 A.2d at 483. My view of this language is in accord with the Circuit Court's interpretation. The state Supreme Court concluded that Peruto's "role [in the defense] was so minor that he did not represent Sullivan and

that the defense was the sole responsibility of Judge DiBona." *United States ex. rel. Sullivan v. Cuyler, supra,* 593 F.2d at 519.

25. *United States ex. rel. Sullivan v. Cuyler, supra,* 593 F.2d at 510.

26. *Cuyler v. Sullivan, supra,* 446 U.S. at 342, 100 S.Ct. at 1715. This determination is a mixed question of law and fact which is not entitled to deference by a federal court on collateral attack. *Id.* I am now bound by this conclusion of law.

made any relevant findings of fact.[27] Recitals of fact by the appellate court unsupported by specific findings of a fact-finding tribunal are generally not dispositive of contested fact issues raised in federal habeas corpus proceedings. *Id.* And, in this instance, the state appellate court similarly made no findings of relevance. Furthermore, the legal conclusion of the Pennsylvania Supreme Court that no conflict of interest existed is freely reviewable by this court. *See Mata v. Sumner, supra*, 649 F.2d at 717.

More precisely, the presumption of correctness is inapplicable to the state appellate court's holding because that court never addressed the second prong of the dual inquiry which is the subject of the remand from the Supreme Court. Since the state supreme court merely found no dual representation, it did not make any findings of fact with regard to Peruto's role as counsel. Simply put, the state record is devoid of any finding of historical fact concerning the issue of whether an actual conflict of interest existed adversely affecting the performance of co-counsel Peruto. This issue is legally distinct from the question of whether Judge DiBona labored under a conflict of interest.[28] Consequently, the absence of relevant findings of fact on this issue dictates that an evidentiary hearing must be held. *Townsend v. Sain, supra*, 372 U.S. at 318, 83 S.Ct. at 759 ("the duty to try the

facts anew exists in every case in which the state court has not after a full hearing reliably found the relevant facts"). *See also, Guice v. Fortenberry, supra*, 661 F.2d at 506; *Harris v. Oliver, supra*, 645 F.2d at 330-31; *Walker v. Wilmet*, 603 F.2d 1038, 1041-42 (2d Cir. 1979), *cert. denied*, 449 U.S. 885, 101 S.Ct. 239, 66 L.Ed.2d 111 (1980); *Taylor v. Cardwell*, 579 F.2d 1380, 1382-83 (9th Cir. 1978); *Jackson v. Estelle*, 570 F.2d 546, 547 (5th Cir. 1978); *White v. Finkbeiner, supra*, 570 F.2d at 201.[29]

In a final attempt to salvage the opinion of the Pennsylvania Supreme Court under § 2254(d), the respondent argues, relying upon *LaVallee v. Delle Rose*, 410 U.S. 690, 93 S.Ct. 1203 (1973)[30] that the opinion of the Pennsylvania high court resolved all credibility issues concerning the conflict claim against the petitioner. I do not find it necessary to discuss *LaVallee* at length since it is clear that the state appellate court did not resolve all factual contentions against the respondent.

The P.C.H.A. court record is replete with clashes between the testimony of Peruto and DiBona as well as Sullivan concerning the tactical decisions made at trial. Not only did the P.C.H.A. court credit Peruto's testimony[31] in certain circumstances, but the state appellate court also chose to credit his testimony regarding his role in the de-

---

**27.** *See supra* at n.11.

**28.** As I read the Supreme Court's opinion in *Sullivan*, if I find that Peruto labored under an actual conflict of interest which adversely affected his performance as co-counsel, I must grant relief. This issue is, of course, complicated by the finding of dual representation in this case. *See Cuyler v. Sullivan, supra*, 446 U.S. at 349-50, 100 S.Ct. at 1718 (both DiBona and Peruto acting as counsel).

**29.** Alternatively, I conclude that the paucity of reliable fact-findings on the conflict of interest issue weighs heavily in favor of exercising my discretionary authority to receive evidence bearing upon this claim. *See Townsend v. Sain, supra*, 372 U.S. at 318, 83 S.Ct. at 759; *Montes v. Jenkins*, 581 F.2d 609, 611 n.1 (7th Cir. 1978); *Crosswhite v. Swenson*, 444 F.2d 648, 650-51 (8th Cir. 1971), cert. denied, 405 U.S. 1042, 92 S.Ct. 1320, 31 L.Ed.2d 584 (1972); *Stumes v. Solem*, 511 F.Supp. 1312, 1318 (S.D.

S.D.1981); *United States ex. rel. Mangiaracina v. Case*, 439 F.Supp. 913, 914 (E.D.Pa.1977), aff'd, 577 F.2d 730 (3rd Cir. 1978).

**30.** Primary emphasis is placed on the following language:

Although it is true that the state trial court did not specifically articulate its credibility findings, it can scarcely be doubted from its written opinion that respondent's factual contentions were resolved against him.

*LaVallee v. Delle Rose, supra*, 410 U.S. at 692, 93 S.Ct. at 1204. In *LaVallee*, the majority found that the opinion of the state court implicitly rejected the petitioner's version of the facts. *Id.* at 695, 93 S.Ct. at 1205. Moreover, the court remained convinced that the state trier utilized the correct constitutional standard. *Id.* These factors are not present herein.

**31.** *See supra* at n.17.

fense.[32]  Thus, the record in this case, in contrast to that in *LaVallee*, demonstrates significant conflicts in testimony critical to petitioner's constitutional claims which were not resolved without doubt by the state appellate court.  Moreover, it cannot seriously be argued that the state court rejected Peruto's testimony *in toto* since the court did not reach the question of whether his stewardship was afflicted with a conflict of interest.[33]

In sum, I hold that: (1) no relevant fact-finding took place in the P.C.H.A. hearing since that court did not decide the constitutional claim on the merits;  and (2) the merits of the factual dispute at issue herein were not resolved since the erroneous legal conclusion of the state appellate court that no multiple representation occurred precluded the possibility of relevant fact-finding on the constitutional issues presented on remand to this court.

---

32.  *See supra* at n.11.

33.  *See supra* at n.28 and accompanying text.