**Terry W. PORTER, Appellant,**

v.

**A.L. LOCKHART, Director, Arkansas Department of Correction, Appellee.**

No. 89–2764.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 11, 1990.

Decided Feb. 13, 1991.

---

11. The statute has since been changed to permit a penalty of up to $2,500 per violation. 7 U.S.C. § 2149(b) (1988).

925 F.2d—26

Scott H. Tucker, Little Rock, Ark., for appellant.

William F. Knight, Little Rock, Ark., for appellee.

Before LAY, Chief Judge, BRIGHT, Senior Circuit Judge, and VAN SICKLE,* Senior District Judge.

BRIGHT, Senior Circuit Judge.

Terry W. Porter filed a federal habeas corpus petition alleging that he received ineffective assistance of counsel and that he pleaded guilty involuntarily. The district court [1] denied relief and dismissed his petition. We affirm.

I. BACKGROUND

On August 23, 1983, Porter went to a Safeway store in Little Rock, Arkansas. In an attempt to leave the store, Porter

---

* The HONORABLE BRUCE M. VAN SICKLE, Senior United States District Judge for the District of North Dakota, sitting by designation.

1. The Honorable G. Thomas Eisele, Chief Judge, United States District Court for the Eastern District of Arkansas.

approached an empty check-out lane, opened the chain across the lane, went through and shut the chain behind him. The Government had a witness who would testify that Porter appeared as though he had meat packages hidden underneath his shirt as he attempted to leave the store.

Before Porter got out the door, a confrontation ensued between Porter and Phillip Hughes, a Safeway employee who was sacking groceries at the time. A scuffle broke out between the two during which Porter discharged a gun. The bullet struck Hughes in the back and he died from the gunshot wound.

On September 21, 1983, the Government charged Porter with one count of capital murder, a/k/a capital felony murder, for the death of Hughes, in violation of Arkansas Statute § 41–1501 and one count of aggravated robbery, in violation of Arkansas Statute § 41–2102. The Public Defenders Office represented Porter and assigned three attorneys to the task.

Over three months later, upon the advice of counsel, Porter entered a plea of guilty to the capital murder charge. The aggravated robbery charge merged into the capital murder charge, and the court sentenced Porter to life in prison without the possibility of parole.

After exhausting his remedies in the Arkansas state courts, Porter filed a habeas corpus petition in federal court alleging several grounds for relief. The district court referred the matter to a magistrate judge. After holding two evidentiary hearings, the magistrate judge recommended that the petition be denied. The district court adopted the findings and recommendations of the magistrate judge and entered judgment dismissing Porter's petition.

Porter then sought review by this court. On appeal, Porter renews his allegations that he received ineffective assistance of counsel and that his plea was not intelligently and voluntarily given. We affirm the district court's denial of habeas relief.

## II. DISCUSSION

At the outset, we note that the State of Arkansas, as it customarily seems to do in habeas cases, contends that Porter procedurally defaulted on all grounds for relief raised in his petition. We reject this contention and proceed to reach Porter's substantive claims.

### A. Ineffective Assistance of Counsel

To prevail on a claim of ineffective assistance of counsel, a defendant must show that his or her counsel's representation fell below an "objective standard of reasonableness" and that, but for this ineffective assistance, there is a reasonable probability that the defendant would not have pled guilty. *Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). The issue of ineffective assistance of counsel presents a mixed question of law and fact and we therefore conduct an independent review of the district court's conclusions. *Laws v. Armontrout,* 863 F.2d 1377, 1381 (8th Cir.1988), *cert. denied,* 490 U.S. 1040, 109 S.Ct. 1944, 104 L.Ed.2d 415 (1989). However, we review the district court's findings of fact under the clearly erroneous standard. *Id.*

Porter argues that he received ineffective assistance of counsel in that one of his attorneys misadvised him, as well as the court, of what the State would have to prove to convict him of the charge of capital murder. Under Arkansas law, to establish capital murder the state must prove, among other things, that the death occurred "under circumstances manifesting extreme indifference to the value of human life." Ark.Stat.Ann. § 41–1501, *now codified at* Ark.Code Ann. § 5–10–101(a)(1) (1987). At the plea hearing, however, Jacqueline Gregan, one of Porter's attorneys, indicated to the court that the elements of capital murder did not include any requisite culpable mental state.

Specifically, Porter relies upon the following exchanges to establish his claim. At the plea hearing, the court asked Porter if he had anything to say. Porter responded as follows:

I want to let the community and the county and the State of Arkansas know that it wasn't intentional it was acciden-

tal. And I ask the State of Arkansas and the people of Arkansas to forgive me for my sins. What I did was wrong. I understand that I have to pay for my wrongs to society.

Plea Hrg.Tr. at 21–22. The court then held a sidebar conference and queried whether defense counsel had "any problem with it being an accident?" *Id.* at 22. Gregan responded as follows: "I don't think so, Your Honor. We've talked about that some. So long as there was an underlying felony and the death occurred, I don't think there's any requisite culpable state." *Id.*

At the evidentiary hearing held by the magistrate judge, Gregan admitted that she had misstated the law. Supp.Evid. Hrg.Tr. at 41–42. Porter contends that this proves that Gregan failed to appreciate the meaning of the applicable law and establishes that he received ineffective assistance of counsel. We disagree. While counsel's misstatement of the law concerns us greatly, our review of the record leaves us unconvinced that the representation afforded Porter fell below an "objective standard of reasonableness."

The testimony of Porter's attorneys established that all three of his attorneys appreciated the meaning of the law applicable to the capital murder charge and that they discussed the possible defense of inadvertence both among themselves and with Porter. While Porter testified on his own behalf at the habeas hearing, at no time did he directly controvert this testimony or assert that his attorneys had erroneously advised him that even if the shooting was accidental, as he claims, he would still be guilty of capital felony murder.[2] Furthermore, even if Gregan's understanding of the law was flawed, Porter has presented no evidence that the other attorneys representing him operated under the same misunderstanding.

Mere proof that an attorney misstated the law on one isolated occasion will not suffice to make out a claim of ineffective

assistance, particularly where, as here, the defendant is represented by more than one attorney. We therefore affirm the district court.

## B. Validity of Guilty Plea

■■ Porter alleges that his plea was not knowingly and voluntarily given in that his attorneys coerced him into pleading guilty and that they misled him as to the possible sentence he would receive. The voluntariness of a guilty plea presents a mixed question of law and fact subject to independent review by this court. *Blalock v. Lockhart*, 898 F.2d 1367, 1370 (8th Cir. 1990). The test for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970).

We are satisfied that the record as a whole shows that Porter's plea represented a knowing and voluntary choice among his alternatives. Porter's attorneys testified that Porter made the decision to plead guilty after investigation of his two proffered alibis showed they would not establish a defense. Moreover, the evidence established that Porter pleaded guilty in order to avoid the possibility of the death penalty.

■ Additionally, the trial court questioned Porter about his understanding of his plea and the waiver of his rights. To each question, Porter acknowledged that he understood the significance of his guilty plea. The trial court specifically advised Porter that his sentence would be life imprisonment without parole:

Life is life under the Arkansas law. It means that you must be there for the rest of your life and the only way that can be altered or changed is for a commutation by the Governor and that can be to any time that the Governor sees fit

---

2. For example, at the plea hearing, Porter initially indicated that he did not understand all of the elements the State would have to prove to convict him of capital felony murder. The trial court then allowed Porter to confer with Gregan

after which Porter indicated that he understood the elements. If Gregan truly misunderstood the law, one cannot fathom why Porter has presented no evidence that she misstated the law to him on this occasion as well.

to do it. Life without parole means life without parole. Now, we've only had that [law] ... [s]even or eight years. It obviously has not been on the books long enough for us to know any more about it than it means exactly what it says, life without parole. And I want you to understand that.

Do you understand that?

[Porter]: Yes, sir, your Honor.

Plea Hrg.Tr. at 19. "Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison,* 431 U.S. 63, 74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977).

Under the circumstances, we conclude that Porter voluntarily pleaded guilty.

## III. CONCLUSION

Accordingly, we affirm the district court's denial of habeas corpus relief.