68 F.3d 484
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Sharon L. NELSON, Petitioner-Appellant,
v.
Mark McKINNA; Gale Norton, Attorney General of the State of
Colorado, Respondents-Appellees.
 No. 95-1190.
(D.C.No. 93-N-2528).
 United States Court of Appeals, Tenth Circuit.
 Oct. 18, 1995.
 
 Before ANDERSON, BALDOCK and BRORBY, Circuit Judges.
 
 ORDER AND JUDGMENT[1]
 BRORBY
 
 1
 After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. See Fed. R.App. P. 34(a); 10th Cir. R. 34.1.9. The cause is therefore ordered submitted without oral argument.
 
 
 2
 Ms. Nelson, who at all times has been represented by counsel, appeals the denial of habeas corpus relief. We affirm.
 
 
 3
 Ms. Nelson pleaded guilty to the first-degree murder of her first husband, Dr. Perry Nelson. The state court in Jefferson County, Colorado, sentenced her to life imprisonment with no possibility of parole for twenty years. In a separate case, Ms. Nelson pleaded guilty in Adams County, Colorado, to the first-degree murder of her second husband, Glen Harrelson. This case resulted in a second life sentence with no possibility of parole for forty years to run concurrent with the first.
 
 
 4
 Ms. Nelson later filed a motion pursuant to Colo. R.Crim. P. 35(c) to withdraw her guilty plea in the Jefferson County case. She alleged inter alia her "plea was not voluntary in that [she] was under severe emotional distress and was unable and incapable of making a wilful, knowing and voluntary plea." After an evidentiary hearing in the Jefferson County District Court, the state district judge denied her motion by written order. Ms. Nelson exhausted her state remedies to no avail.
 
 
 5
 Ms. Nelson then filed a petition for a writ of habeas corpus in federal court. She alleged inter alia her "[c]onviction was obtained as a result of a plea of guilty while [she] was mentally incompetent, i.e.: under duress." A magistrate judge recommended the petition be denied because Ms. Nelson failed to show her plea "was not voluntary and knowing" and because the "state court finding is supported by the evidence." The district court adopted this recommendation and denied Ms. Nelson's petition. This appeal followed.
 
 
 6
 Ms. Nelson now contends the district court erred in denying her petition. She again claims her "guilty plea was not knowing and voluntary because it was the result of threats and duress." We disagree.
 
 
 7
 A guilty plea must "represent[ ] a voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970); see also Marshall v. Lonberger, 459 U.S. 422, 431 (1983); Boykin v. Alabama, 395 U.S. 238, 242-44 & n. 5 (1969). Whether a guilty plea was knowing and voluntary is a question of federal law subject to de novo review. Marshall, 459 U.S. at 431; Laycock v. New Mexico, 880 F.2d 1184, 1186 (10th Cir.1989). However, we presume the state court's determinations of historical fact are correct and defer to the state court's assessments of witnesses' credibility if they are "fairly supported" by the record. Marshall, 459 U.S. at 431-34; 28 U.S.C. 2254(d).
 
 
 8
 We begin our review by examining the colloquy between Ms. Nelson and the state court judge who accepted her guilty plea. A fair reading of this transcript reveals full compliance with Colo. R.Crim. P. 11, which encompasses the factors relevant to a voluntariness determination. At the plea colloquy, Ms. Nelson stated she was not affected by any stress or emotional problems and that no one had coerced her into pleading guilty. She also confirmed she had ample time to consult with her attorney and was pleased with the representation she received. While compliance or noncompliance with Rule 11 is alone not determinative in assessing the voluntariness of a plea, it is one factor to be considered. As with its counterpart in the Federal Rules of Criminal Procedure, Colo. R.Crim. P. 11 should be read as a device intended to produce a complete record of the factors relevant to a voluntariness determination. See McCarthy v. United States, 394 U.S. 459, 465 (1969). To now accept Ms. Nelson's contentions would require this court to disregard her statements to the trial court judge in the colloquy in favor of the assertions she later made in her Rule 35(c) hearing.
 
 
 9
 In the Rule 35(c) hearing, Ms. Nelson testified she pleaded guilty because: (1) she feared the death penalty; (2) she feared facing a murder trial; (3) she feared for her children; and (4) she feared her codefendant, Gary Adams. Ms. Nelson claimed she had these fears in mind when she entered her guilty plea and these fears rendered her plea involuntary.
 
 
 10
 Ms. Nelson's argument relies most heavily on her alleged fear of Gary Adams. She testified in her Rule 35(c) hearing she was afraid to stand trial because Mr. Adams would harm her if she implicated him. She offered several allegations to support this fear. She claimed Mr. Adams conveyed a threat to her in prison when a food server in the prison cafeteria passed his thumb across his throat as if slicing it and said, "you know who that's from." Mr. Adams also supposedly told Ms. Nelson before they were arrested, "if I ever go down on this you are going to go down with me." Mr. Adams's cellmate, Douglas Sorrenson, when interviewed by police, stated that Mr. Adams had strong motivation "to get" Ms. Nelson and had the "people to do it." Ms. Nelson also suggested Mr. Adams would have had someone harm her children if she had taken her case to trial.
 
 
 11
 The state court found the evidence presented in the Rule 35(c) hearing "more consistent with the conclusion that the defendant has changed her mind about the wisdom of pleading guilty than with the conclusion that the plea was involuntary at the time it was made." After analyzing each of Ms. Nelson's allegations, we agree with the state court's conclusion.
 
 
 12
 First, Jefferson County decided not to seek the death penalty against Ms. Nelson, and Ms. Nelson knew this when she pleaded guilty. In the plea hearing, the state judge asked Ms. Nelson, "do you understand that if you enter a plea of guilty, you'll be subjecting yourself to a life term of imprisonment?" Ms. Nelson answered, "Yes, I do." Thus, Ms. Nelson's claim she pleaded guilty out of fear of the death penalty is not credible. More fundamentally, even if Ms. Nelson had pleaded guilty to avoid a possible death penalty, such a decision is considered voluntary under constitutional standards. See Brady v. United States, 397 U.S. 742, 749-50 (1970); Porter v. Lockhart, 925 F.2d 1107, 1110 (8th Cir.), cert. denied, 501 U.S. 1256 (1991).
 
 
 13
 As to her fear of facing a murder trial, Ms. Nelson suggested the stress she was under at the time she pleaded guilty was so great it coerced her into pleading guilty. The possibility of facing a murder trial undoubtedly creates stress. This stress is by its nature coercive and likely to make a defendant consider the option of pleading guilty rather than endure a painful trial. Such coercion, however, does not necessarily render a plea involuntary. To the contrary, it results from the deliberative balancing of pros and cons any defendant must make in deciding how to plea. In Ms. Nelson's case, she had to consider the benefits of avoiding a potentially harsher sentence and putting herself and children through a trial against the cons of subjecting herself to an automatic conviction. See Kercheval v. United States, 274 U.S. 220, 223 (1927) (guilty plea acts as a conviction). Ms. Nelson freely chose the less resistant path of pleading guilty.
 
 
 14
 Ms. Nelson's last two arguments rely on her alleged fear for herself and her children at the hands of Gary Adams. Though she claims to have feared the prospect of implicating Mr. Adams, Ms. Nelson admitted in the Rule 35(c) hearing that she told police of Mr. Adams's involvement in the murders of her two husbands before police had taken Mr. Adams into custody. In other words, she implicated Mr. Adams early in the investigation, long before her guilty plea. Ms. Nelson cannot assert convincingly that she pleaded guilty out of fear of being forced to implicate Mr. Adams when she had already done so. The alleged instances of threat put forward by Ms. Nelson are consistent with an animus already harbored by Mr. Adams based on statements Ms. Nelson had already made to the police. Furthermore, Ms. Nelson had no knowledge of the statements Mr. Adams made to his cellmate, Mr. Sorrenson, when she entered her plea. She did not find out about these statements until after her plea. Even if we assume Ms. Nelson feared Mr. Adams, the evidence does not satisfactorily establish this fear rendered her plea involuntary or unknowing. Ms. Nelson may have feared Mr. Adams, but she has not demonstrated a causal link between this fear and her decision to plead guilty.
 
 
 15
 Because the majority of Ms. Nelson's proffered evidence in support of her motion to change her plea came from her own testimony at the Rule 35(c) hearing, her credibility is a factor we consider. The state court's findings and denial of Ms. Nelson's motion amount to a finding that her testimony was incredible when compared to her statements at the Rule 11 colloquy and countervailing evidence. See Marshall v. Lonberger, 459 U.S. at 433; LaVallee v. Delle Rose, 410 U.S. 690, 694 (1973) (decision not to grant relief is tantamount to an express finding against the credibility of the defendant). That Ms. Nelson's testimony at the evidentiary hearing was not believable is a factual finding that we are not at liberty to redetermine. Marshall, 459 U.S. at 433; 28 U.S.C. 2254(d). Given the transcript of the colloquy and the testimony of Ms. Nelson's trial counsel, we believe the state court's determination is fairly supported by the record. See 28 U.S.C. 2254(d)(8).
 
 
 16
 Based on the factual findings of the state court and our own review of the record, we find Ms. Nelson's guilty plea was entered knowingly and voluntarily. We therefore affirm the judgment of the district court.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470